**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| MARK LEE, on behalf of himself and all others similarly situated, | Case No. 1:24-cv-04493-LJL |
| Plaintiff, | ORAL ARGUMENT REQUESTED |
| - against - | |
| SPRINGER NATURE AMERICA, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SPRINGER NATURE AMERICA, INC.'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, FOR A STAY OF PROCEEDINGS**

Sharon L. Schneier
Nimra H. Azmi
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Email: sharonschneier@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .... 1

FACTUAL BACKGROUND .... 2

A. The Parties .... 2
B. The VPPA .... 3
C. Defendant's Website .... 3
D. The Pixel .... 4
E. The Putative Class .... 5

ARGUMENT .... 5

I. Plaintiff's Complaint Fails Under Applicable Pleading Standards .... 5

II. This Action Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Have Article III Standing. .... 7

1. Plaintiff Has Not Pled "A Close Historical Analogue" for His Claim. .... 8

III. Plaintiff Has Not Plausibly Alleged a Violation of the VPPA. .... 11

1. Springer Nature Is Not a Video Tape Service Provider. .... 12

2. Plaintiff Is Not a "Consumer" under the VPPA. .... 13

3. Plaintiff's FID and Accessed URLs Do Not Constitute PII under the VPPA .... 18

4. Defendant Did Not "Knowingly Disclose" Plaintiff's PII. .... 20

IV. In the Alternative, This Case Should Be Stayed Pending the Second Circuit's Decision in *Salazar*. .... 22

CONCLUSION .... 24

## TABLE OF AUTHORITIES

**Pages**

**Federal Cases**

*Addi v. Int'l Bus. Machines, Inc.*,
No. 23 Civ. 5203 (NSR), 2024 WL 2802863 (S.D.N.Y. May 31, 2024)....12, 23

*Alex v. NFL Enters. LLC*,
No. 1:22-CV-09239 (ALC), 2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023)....14, 15, 16

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)....6

*Aponte v. Ne. Radiology, P.C.*,
No. 21 CV 5883 (VB), 2022 WL 1556043 (S.D.N.Y. May 16, 2022)....11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022)....7

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)....14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2017)....6

*Biro v. Condé Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012)....9

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023)....12, 13

*Carroll v. Gen. Mills, Inc.*,
No. CV 23 1746 DSF, 2023 WL 4361093 (C.D. Cal. June 26, 2023)....13

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023)....16, 17

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....6

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*,
790 F.3d 411 (2d Cir. 2015)....5, 6

*Costanzo v. City of Omaha*,
No. 8:04CV99, 2004 WL 2359722 (D. Neb. Oct. 19, 2004) ....................................14

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017), *appeal docketed*, No. 23 -7597 (2d Cir. Nov. 1, 2023)..........18

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)..........................................................................14

*Faehner v. Webcollex, LLC*,
No. 21-1734-CV, 2022 WL 500454 (2d Cir. Feb. 18, 2022)..........................................8

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023)....................................................................17

*Glick v. CMRE Fin. Servs., Inc.*,
No. 21 CV 7456 (NSR), 2022 WL 2475690 (S.D.N.Y. July 6, 2022)...............................9, 10

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ............................................................ *passim*

*Hoover v. HSBC Mortg. Corp. (USA)*,
No. 13 Civ. 149 (MAD), 2014 WL 12781322 (N.D.N.Y. July 9, 2014) ...............................24

*In re Hulu Priv. Litig.*,
No. C 11 03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)..........................................22

*In re Hulu Privacy Litigation*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................................................................21

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)................................................................................18

*In re Thelen LLP*,
736 F.3d 213 (2d Cir. 2013)..................................................................................7

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017).....................................................................12

*Joiner v. NHL Enters., Inc.*,
No. 23-CV-2083 (LAK) (BCM), 2024 WL 639422 (S.D.N.Y. Feb. 15, 2024)...............23, 24

*Kappel v. Comfort*,
914 F. Supp. 1056 (S.D.N.Y. 1996) ......................................................................23

*Lamb v. Forbes Media LLC*,
No. 22-CV-06319-ALC, 2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023)............14, 16, 17, 24

*Lamb v. Forbes Media LLC*,
No. 22-cv-06319-ALC, 2024 WL 1364678 (S.D.N.Y. Apr. 1, 2024) ............................23, 24

*Leslie v. Thomson Reuters Corp.*,
No. 22 Civ. 07936 (JHR), 2023 WL 6173511 (S.D.N.Y. Sept. 22, 2023).......................23, 24

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021)...........................................................................................7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)......................................................................................5, 6

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023)........................................................................13

*McCausland v. Gray Media Grp., Inc.*,
No. 22 CIV. 7539 (PGG), 2024 WL 1374765 (S.D.N.Y. Mar. 31, 2024),
*judgment entered*, 2024 WL 2109302 (S.D.N.Y. Apr. 16, 2024) ...................................14, 15

*McCracken v. Verisma Sys., Inc.*,
No. 14 Civ. 6248 (MAT), 2018 WL 4233703 (W.D.N.Y. Sept. 6, 2018) ............................23

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015).....................................................................................20

*Orozco v. Fresh Direct, LLC*,
No. 15-cv-8226, 2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016).............................................7

*Pileggi v. Washington Newspaper Publ'g Co.*,
No. 23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024),
*appeal docketed*, No. 24-7022 (D.C. Cir. Feb. 22, 2024) ................................................13

*Rapoport v. Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000)..............................................................................6

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)......................................................................18, 19

*Salazar v. National Basketball Ass'n*,
685 F. Supp. 3d 232 (S.D.N.Y. 2023)..................................................................5, 15, 16

*Salazar v. National Basketball Ass'n*,
Case No. 23-1147 (2d Cir.) ....................................................................................... *passim*

*Shields v. Professional Bureau of Collections of Maryland, Inc.*,
55 F.4th 823 (10th Cir. 2022).............................................................................9, 10, 11

*Sikhs for Just. v. Nath*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012) ........................................................................23, 24

*Solomon v. Flipps Media, Inc.*,
No. 22-CV-5508 (JMA)(JMW), 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023).............18, 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..........................................................................................................7, 8

*Sputz v. Alltran Fin., LP*,
No. 21-cv-4663, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) .....................................8, 9, 10

*Stark v. Patreon, Inc.*,
No. 3:22-cv-03131-JCS, ECF 49 (N.D. Cal. Dec. 5, 2022) .................................................12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..........................................................................................................7, 8

*Weisz v. Sarma Collections, Inc.*,
No. 21-CV-06230 (PMH), 2022 WL 1173822 (S.D.N.Y. Apr. 20, 2022)............................10

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) ..........................................................................18, 19, 20

**Federal Statutes**

18 U.S.C. § 2710(a)(1) ..........................................................................................1, 3, 13, 15

18 U.S.C. § 2710(a)(3) ..............................................................................................3, 15, 18

18 U.S.C. § 2710(a)(4) ...................................................................................................3, 12

18 U.S.C. § 2710(b)........................................................................................................11, 20

18 U.S.C. § 2710(b)(1)...........................................................................................3, 15, 18, 21

18 U.S.C. § 2710(c)(2) .............................................................................................................3

18 U.S.C. § 2710 *et seq.* ...........................................................................................................1

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(1) ........................................................... *passim*

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................................1, 6, 24

**Other Authorities**

Restatement (Second) of Torts § 652B .........................................................................11

Restatement (Second) of Torts § 652D ..........10

Defendant Springer Nature America, Inc. ("Defendant" or "Springer Nature") submits this memorandum of law in support of its motion to dismiss with prejudice the putative class action complaint filed by Mark Lee ("Plaintiff") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to stay further proceedings.

## PRELIMINARY STATEMENT

Plaintiff Mark Lee ("Plaintiff") brings this putative class action under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq.*—a 1988 law intended to prevent "video tape service providers" from disclosing their customers' records without consent. The VPPA authorizes $2,500 in "liquidated damages," making it a tempting vehicle for class-action litigation. Unsurprisingly, there has been a flurry of attempts to misuse the VPPA to demand a statutory damages payday for routine internet browsing activities by targeting any website that features video content alongside text-based content—even if the website is freely accessible to any casual visitor without the need to sign up or make a purchase. Plaintiff claims that he is entitled to actual and statutory damages because when he allegedly watched unspecified publicly available videos on Defendant's website, https://www.scientificamerican.com (the "Website"), the Pixel code transmitted to Meta his Facebook ID number and the hyperlink(s) of the (unspecified) video(es) he watched. However, the courts have been clear that the statute does not protect visitors of free web-based video content who plainly are not "renter[s], purchaser[s], or subscriber[s] of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

Plaintiff's efforts to shoehorn his allegations into the VPPA fall short on several grounds. **First**, Plaintiff has pled only a statutory harm based on the purported violation of the VPPA and does not have Article III standing to bring his suit in federal court. **Second**, Defendant is a magazine publisher and the primary focus of its business is the publication of articles—not creating or distributing audiovisual content. It is therefore not a "video tape service provider" under the

statute. **Third**, Plaintiff is not a "consumer" since he has not plausibly alleged that he "subscribed" to Defendant's audiovisual content or that his unpaid "subscription" to Springer Nature's Website allowed him access to audiovisual content that was not otherwise publicly available. **Fourth**, the pieces of information allegedly disclosed by the Pixel (also known as the Meta Pixel, hereinafter the "Pixel")—the Facebook ID or FID (a numerical identifier assigned by Facebook to each of its account holders) and webpage URLs—do not constitute personally identifiable information ("PII") under the statute. In particular, Plaintiff does not offer any allegations that the Facebook account purportedly connected to his FID contained any of his identifying information. **Fifth**, Plaintiff has not pled that Defendant "knowingly disclosed" his PII, since he does not offer a single fact supporting that *his* information was ever disclosed. **In the alternative**, should this Court decide not to grant the motion to dismiss, the balance of interests favors staying this case, as other courts in this District have done, pending the Second Circuit's decision on the scope of the VPPA in *Salazar v. National Basketball Ass'n*, No. 23-1147 (2d Cir.).

For these reasons, Plaintiff's VPPA claim must be dismissed with prejudice or stayed pending the Second Circuit's decision in *Salazar*.

## FACTUAL BACKGROUND

### A. The Parties

Defendant Springer Nature has been a global publisher of well-regarded scientific magazines, including *Scientific American*, for almost 200 years. Declaration of Sharon Schneier ("Schneier Decl.") ¶ 1; *id.* Ex. A. *Scientific American* is a popular science magazine that has published writings by over 200 Nobel Prize winners. *Id.* ¶ 1. *Scientific American* operates the Website associated with the magazine at https://www.scientificamerican.com. *Id.* The Website makes the publication's articles available to online visitors. *Id.* Any video content associated with

*Scientific American*'s articles is available on the Website at no cost and does not require a subscription to access or view. *Id.* ¶¶ 4, 6.

Plaintiff alleges he subscribed to the Website at some undisclosed time and requested or obtained from it prerecorded videos. Compl. ¶ 8. Plaintiff does *not* allege that he paid or was required to pay any money to view videos available on the Website. Similarly, he has not alleged that signing up to the Website was a precondition to accessing the videos. Nor has Plaintiff identified a single video that he requested or viewed during the relevant period or at any time.

### B. The VPPA

Passed in 1988, the VPPA bars a "video tape service provider" from "knowingly" disclosing the personally identifiable information of its "consumer." 18 U.S.C. § 2710(b)(1). The VPPA defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). It defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Id.* § 2710(a)(3). The term "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). The VPPA authorizes $2,500 in "liquidated damages." *Id.* § 2710(c)(2).

### C. Defendant's Website

For almost two centuries, Springer Nature has been a global publisher of scientific magazines, including *Scientific American.* Schneier Decl. ¶ 1; Ex. A. Springer Nature's Website, https://www.scientificamerican.com, features articles that are published in its print magazine and online. *Id*. While videos may appear on the same webpages as articles, they are collected and

housed on a separate page, which can be located by navigating to the "Explore Topics" button on the landing page and selecting "Videos." *Id.* ¶¶ 3-4; Ex. D.[1] A visitor can freely view *unlimited* videos on the video page regardless of whether they are a subscriber to the magazine or the Website. *Id.*

Plaintiff alleges that he is a subscriber "to Defendant's Website," Compl. ¶ 8, and has been one "for over ten years." *Id.* ¶ 42. To subscribe, the Website allegedly "required" him to "submit his full name and email address, and then confirm that email address." *Id.* ¶ 43. He does *not* claim that he was required to or did submit any payment information to Defendant. While Plaintiff pleads that he "requested or obtained prerecorded audiovisual materials through his subscription to the Website," *id.* ¶ 44, he does not allege that a subscription was required to view these materials. Plaintiff also does not identify a *single* video that he purportedly watched through his "subscription" or plead that he ever needed to log in to view any videos on the Website.

**D. The Pixel**

Plaintiff alleges that Defendant's Website hosts an online marketing tool called the Pixel, which is a string of code that transmits PII to Meta regarding the online website activities that Defendant's subscribers perform while visiting the Website. Compl. ¶¶ 3, 24. Among the information that the Pixel allegedly discloses to Meta is a user's FID, which is a number assigned to each Facebook profile, as well as URLs of the webpages viewed on the Website. *Id.* ¶¶ 4, 29. The FID is displayed as a numeric value referred to as the "c_user." *Id.* ¶ 35. Plaintiff alleges that a user's Facebook page can be located by inserting the FID into a hyperlink. *Id.* ¶ 63. Plaintiff further alleges that the Pixel enabled Defendant to "target digital advertising to its subscribers (and

[1] In June 2022, when the statutory and class period began to run, the Website's video page could similarly be freely accessed by clicking a button at the top of the landing page. Schneier Decl. ¶ 4; *id.* Ex. D.

potential subscribers) based on the material those subscribers previously requested or obtained on the Website, including audio visual materials." *Id.* ¶ 32.[2]

Plaintiff never actually pleads that *his* video-viewing information was transmitted to Meta. Instead, Plaintiff's counsel created a fictional account for "Kendra Marta" to allege that the Pixel "installed within [the] Website, disclosed to Meta both the pre-recorded audio visual material's title and the subscriber's FID" hosted on the Scientific American website. *Id.* ¶ 33 & n.15. Plaintiff alleges that these "transmissions" facilitate Meta's ability to identify a user based on the FID and hyperlink. *Id.* ¶ 37. Notably however, Plaintiff does not plead that his information was transmitted nor does he offer any facts about the contents of *his* own Facebook profile.

**E. The Putative Class**

Plaintiff purports to bring this action on behalf of "all persons in the United States who requested or obtained prerecorded audiovisual material through a subscription to the Website operated by Defendant and had a Facebook Profile during the period during which the Pixel was active on Defendant's Website" from June 12, 2022 until June 12, 2024. Compl. ¶¶ 47-48.

## ARGUMENT

### I. Plaintiff's Complaint Fails Under Applicable Pleading Standards

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) "for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). The plaintiff "bears the

---

[2] The Pixel is described at Facebook, *Cookies Policy* (Dec. 12, 2023), http://www.facebook.com/policy/cookies/ (click "Authentication"). *See also Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 154 (S.D.N.Y. 2023) (describing the Pixel); *Salazar v. National Basketball Ass'n*, 685 F. Supp. 3d 232, 236 (S.D.N.Y. 2023) (same).

burden of 'alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue'" under Rule 12(b)(1). *Cortlandt St. Recovery Corp.*, 790 F.3d at 417 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Moreover, in ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on evidence outside the complaint. *See id.*

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to *state* a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Conclusory allegations are not entitled to the presumption of truth on a motion to dismiss, and a plaintiff "armed with nothing more than conclusions," "labels," or "[t]hreadbare recitals of the elements of a cause of action" fails to state a claim. *Id.* at 678-81 (citation omitted). Claims that are merely possible or conceivable are subject to dismissal. *Id.* at 679-80. As particularly relevant here, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 557 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2017)).

"In resolving a motion to dismiss . . . a district court . . . may refer" to appropriate "evidence outside the pleadings." *Makarova*, 201 F.3d at 113. A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citation omitted). Courts may also rely on a document or other piece of evidence where the complaint "relies heavily upon its terms and effect" thereby rendering it "'integral' to the complaint." *Id.* at 153 (citation omitted). If such documents contradict the plaintiff's allegations, "the documents control and this Court need not accept as true the [plaintiff's] allegations." *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). "[M]atters judicially noticed by the

District Court are not considered matters outside the pleadings." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (alteration in original) (citation omitted). Here, the Court can consider the Website's content and accessibility because it is incorporated by reference into the Complaint, is central to Plaintiff's allegations, and its authenticity is not in question. *See Orozco v. Fresh Direct, LLC*, No. 15-cv-8226, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016) (assessing the "totality" of a website "incorporated by reference" into a complaint "at the center of Plaintiff['s] allegations" in resolving a motion to dismiss). Relatedly, this Court can also take "judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022).

## II. This Action Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Have Article III Standing.

Plaintiff's Complaint claims a purely statutory—not a concrete—harm based on a purported VPPA violation and cannot, as a matter of law, establish that he has Article III standing. This case should be dismissed pursuant to Rule 12(b)(1).

To establish Article III standing, a plaintiff must show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In *TransUnion*, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" 594 U.S. at 426 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). As the Supreme Court held, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue [a] private defendant over that violation in federal court." *Id.* at 427; *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("[I]in suits for damages plaintiffs cannot

establish Article III standing by relying entirely on a statutory violation."). This is because "an injury in law is not an injury in fact" and legislative bodies cannot legislate around Article III standing by "enact[ing] an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion*, 594 U.S. 413 at 426 (citation omitted). As the Supreme Court succinctly put it: "No concrete harm, no standing." *Id.* at 442.

As the Second Circuit has explained, *TransUnion* "narrowed the grounds for asserting standing where the injury is primarily statutory." *Faehner v. Webcollex, LLC*, No. 21-1734-CV, 2022 WL 500454, at *1 (2d Cir. Feb. 18, 2022). To determine whether a claim is sufficiently "concrete," a court must "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (citing *Spokeo*, 578 U.S. at 341). Crucially, "[t]hat inquiry asks whether plaintiffs have identified *a close historical or common-law analogue for their asserted injury*." *Id*. (emphasis added). "Where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." *Sputz v. Alltran Fin*., *LP*, No. 21-cv-4663, 2021 WL 5772033, at *3 (S.D.N.Y. Dec. 5, 2021) (citation omitted).

### 1. Plaintiff Has Not Pled "A Close Historical Analogue" for His Claim.

Plaintiff has not carried his burden of pleading Article III standing since his Complaint does not demonstrate that his VPPA claim bears a "close relationship" to a "traditionally recognized harm." *TransUnion*, 594 U.S. at 424. At most, Plaintiff has pled a bare statutory violation, but this cannot show concrete injury; nor has he alleged any physical, monetary, or other tangible injury. While Plaintiff points to "reputational harm" or defamation, disclosure of private information, and intrusion upon seclusion as potential common law analogues to which he can tether Article III standing, *see* Compl. ¶¶ 18-19, each analogue fails in this case.

**No Defamation**. The Pixel's alleged disclosure of Plaintiff's PII to Meta is not analogous to the common law tort of defamation. Plaintiff does not allege that any disclosed information was false—the "*sine qua non*" of a defamation claim. *See Biro v. Condé Nast*, 883 F. Supp. 2d 441, 467 (S.D.N.Y. 2012). There is therefore no "close relationship" between Plaintiff's alleged VPPA violation and defamation sufficient to confer Article III standing.

**No Public Disclosure of Private Facts.** The alleged disclosure also does not have a historical analogue in public disclosure of private facts since Plaintiff has not pled that his PII was publicized to anyone other than Meta's systems. To show the requisite publicity, a plaintiff's information must be "made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Glick v. CMRE Fin. Servs., Inc.*, No. 21 CV 7456 (NSR), 2022 WL 2475690, at *3 (S.D.N.Y. July 6, 2022) (citation omitted). Plaintiff has not pled this key element,requiring dismissal. *See Sputz*, 2021 WL 5772033, at *3.

The Tenth Circuit's decision in *Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th 823 (10th Cir. 2022) is instructive. There, the plaintiff alleged that a debt collector violated the Fair Debt Collection Practices Act by disclosing information about her debt to a third-party mailing service that then mailed letters to plaintiff about her debt. *Id.* at 827. The Tenth Circuit concluded that plaintiff had "failed to allege anything close to the required publicity element" because the debt collector's disclosure to the outside mailer was not a disclosure to "the public at large nor someone likely to widely communicate her debt." *Id.* at 829. The Tenth Circuit further noted that "[I]t is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life . . . to a small group of persons." *Id.* (quoting Restatement (Second) of Torts, § 652D cmt. a). Similarly here, Defendant's

alleged disclosure of Plaintiff's viewing information to a singular entity—Meta—is not a disclosure to the *public* at large.

Courts in this District have also declined to find Article III standing where plaintiffs have attempted to hook their claim to the tort of public disclosure without alleging publicity—especially where that alleged disclosure was not to a human. For example, in *Sputz*, the court dismissed the case for lack of Article III standing, determining that transmitting information to a letter vendor did "not remotely rise to the level of 'publicizing' private information to the public at large"—particularly since plaintiff had not alleged that "any human being ever saw his private information." 2021 WL 5772033, at *3, *4; *see also Weisz v. Sarma Collections, Inc.*, No. 21-CV-06230 (PMH), 2022 WL 1173822, at *3 (S.D.N.Y. Apr. 20, 2022) (no invasion of privacy analogue where plaintiff did not allege any employee reviewed or saw plaintiff's information); *Glick*, 2022 WL 2475690, at *3 (plaintiff lacked Article III standing where complaint did not allege that any person read plaintiff's information or that it was provided to the public at large).

Here, too, Plaintiff merely alleges that the Pixel transmitted his PII to Meta's systems. Critically, he does *not* allege that any human actually received or reviewed his PII let alone disseminated it further to the public. This is precisely the sort of injury that the courts in *Sputz*, *Wesiz*, and *Glick* rejected as insufficient to liken the claim to public disclosure of private facts and confer Article III standing.

**No Intrusion Upon Seclusion**. Plaintiff cannot salvage Article III standing by availing upon intrusion upon seclusion. A defendant "who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for intrusion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. Again, *Shields* is instructive. Like that plaintiff,

Plaintiff "never alleged [Springer Nature] intruded [his] 'private solitude.'" *Shields*, 55 F.4th at 829 (rejecting intrusion upon seclusion analogue as basis for Article III standing).

In particular, Plaintiff cannot show standing because he has not alleged that Springer Nature, as opposed to Meta, "improperly accessed plaintiff's data." *Aponte v. Ne. Radiology, P.C.*, No. 21 CV 5883 (VB), 2022 WL 1556043, at *5 (S.D.N.Y. May 16, 2022) (finding no standing where plaintiff did not show common law analogue to injuries suffered from defendants' actions). In *Aponte*, the court determined that allegations that third parties improperly accessed plaintiff's information held by defendant did not show that *defendant* had intruded upon plaintiff's seclusion. So too here: Plaintiff pleads—over and over again—that his claim is based on disclosure of Plaintiff's video viewing information to Meta. *See, e.g.*, Compl. ¶¶ 1, 2, 4, 5, 6, 20. In other words, the only entity that Plaintiff has pled improperly accessed his information was Meta, not Springer Nature. Accordingly, Plaintiff has not and cannot "identif[y] a close historical or common-law analogue" to his alleged injuries, which means that Plaintiff has not shown Article III standing for his VPPA claim. *Aponte*, 2022 WL 1556043, at *5.[3]

Because Plaintiff cannot establish any common law tort analogue for his alleged statutory injury, he has not demonstrated Article III standing. This case can be dismissed with prejudice due to this failure alone.

### III. Plaintiff Has Not Plausibly Alleged a Violation of the VPPA.

Plaintiff's claim can separately and independently be dismissed because he has not plausibly alleged a claim under the VPPA. "To state a claim under § 2710(b), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally

[3] While courts in this District – in different circumstance – have found Article III standing for VPPA claims Plaintiff has not alleged that any private information was disclosed and falls well short of any relevant historical or common law analogue as required under *TransUnion.*

identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute." *Addi v. Int'l Bus. Machines, Inc.*, No. 23 Civ. 5203 (NSR), 2024 WL 2802863, at *3 (S.D.N.Y. May 31, 2024). Here, the Complaint fails to plead that Defendant is a video tape service provider, that Plaintiff is a consumer as defined by the statute, that his PII is at issue, and that any disclosure was made knowingly. For these reasons, Plaintiff's VPPA claim must be dismissed with prejudice.

**1. Springer Nature Is Not a Video Tape Service Provider.**

As a threshold matter, the Complaint must be dismissed because Springer Nature is a longstanding scientific news organization—not a video tape service provider.[4] The VPPA restricts only video tape service providers "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Providing such video content must be "a particular field of endeavor" or a "focus of the defendant's work." *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)). As such, "[i]t is not enough that the defendant is engaged in the delivery of video content "peripherally or passively." *Id.* Rather, "plaintiff must sufficiently allege that the defendant's "products are specifically tailored to serve audiovisual material." *Id.* (citations omitted).

Defendant is a publisher of print magazines and articles focused on developments in scientific fields; *not* on the delivery of audiovisual materials. *See* Schneier Decl. ¶ 1; *id.* Ex. A. The Complaint concedes as much given that it alleges *no* facts to show that Defendant's business is "centered, tailored, or focused around providing and delivering audiovisual content." *Cantu*,

[4] The U.S. Department of Justice ("DOJ") has confirmed that the VPPA does *not* apply to news organizations. *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS, ECF 49 at 10 (N.D. Cal. Dec. 5, 2022) (the VPPA "does not apply to news organizations, advocacy groups, or other entities whose mission is to publicize information of public import").

697 F. Supp. 3d at 994. Notably, Plaintiff does not allege any facts to show that the Website is specifically tailored to serve audiovisual material or that these audiovisual materials are core to Defendant's business. As courts have recognized, it is not "plausible that any company that creates its own video content, however ancillary to the company's purpose, is 'engaged in the business of' delivering audio visual content." *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023); *see also Pileggi v. Washington Newspaper Publ'g Co.*, No. 23-345 (BAH), 2024 WL 324121 at *7 (D.D.C. Jan. 29, 2024), *appeal docketed*, No. 24-7022 (D.C. Cir. Feb. 22, 2024). For almost 200 years, *Scientific American* has been in the business of publishing in-depth feature articles, timely news stories, expert opinions and commentary. The limited video content that it publishes complements its primary business—articles. *See* Schneier Decl. ¶¶ 4-5; *id.* Exs. D & E. Ultimately, the minimal videos hosted on the Website do not turn Defendant into a video tape services provider under the VPPA. *Carroll v. Gen. Mills, Inc.*, No. CV 23 1746 DSF (MRWx), 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023); *see also Cantu*, 697 F. Supp. 3d at 994.

Defendant is not a video tape services provider under the VPPA and the Complaint must be dismissed.

**2. Plaintiff Is Not a "Consumer" under the VPPA.**

The VPPA only applies to a "consumer" of video services, a term the statute defines as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). To qualify as a consumer under the VPPA, a person must rent, purchase, or subscribe "to audio visual materials, not just any products or services from a video tape provider." *Golden*, 688 F. Supp. 3d at 166. The VPPA does not define "subscriber." Courts have held that a plaintiff can only qualify as a "subscriber" under the VPPA if a connection exists between the subscription and the video content. This requirement is hardly surprising. Congress passed the VPPA after Supreme Court nominee Robert Bork's videotape rental history was leaked from a

brick-and-mortar store, S. Rep. No. 100-599, at *5 (1988), and was enacted to address that specific conduct. *See Costanzo v. City of Omaha*, No. 8:04CV99, 2004 WL 2359722, at *2 (D. Neb. Oct. 19, 2004) ("This statute applies to private video stores and is designed to prohibit dissemination of information by the store owners about the consumers."). But neither the VPPA's text nor its intent covers the provision of materials or services *unrelated* to video delivery by a business—even those businesses otherwise engaged in the videotape rental. *See* S. Rep. No. 100-599, at *11-12 ("[S]imply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill.").

The Second Circuit has noted that a "'subscription' entails an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015). Put another way, "[s]ubscriptions involve some or [most] of the following [factors]: payment, registration, commitment, delivery, [expressed association,] and/or access to restricted content." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015).

Here, Plaintiff essentially seeks to assert putative VPPA rights of people who buy or subscribe to *anything* from Defendant and then, separately, watch a free video on the Website. Numerous courts in this District have held that the plain text of the VPPA forecloses Plaintiff's interpretation. The law is clear: merely viewing publicly available videos or becoming subscribers to a website does *not* render one a "subscriber" to audiovisual material under the VPPA. *See, e.g.*, *McCausland v. Gray Media Grp., Inc.*, No. 22 CIV. 7539 (PGG), 2024 WL 1374765, at *7 (S.D.N.Y. Mar. 31, 2024), *judgment entered*, 2024 WL 2109302 (S.D.N.Y. Apr. 16, 2024); *Lamb v. Forbes Media LLC*, No. 22-CV-06319-ALC, 2023 WL 6318033, at *13 (S.D.N.Y. Sept. 28, 2023); *Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y.

Sept. 27, 2023).[5] While Plaintiff vaguely alleges that Defendant "invites users to become subscribers" to its Website and "ask[s] them to submit their . . . payment information" to obtain some undisclosed product, he does *not* claim that payment or a subscription was required in order to view any videos on the Website. Compl. ¶ 27.[6] Nor could he. The Website's video content is—and has been since at least June 2022—freely available to any member of the public, whether logged in with an account or not. Schneier Decl. ¶¶ 3-6; Exs. B, C, D & E. Viewing freely available videos does not render one a "subscriber" of such materials. *McCausland*, 2024 WL 1374765, at *7; *see also Alex*, 2023 WL 6294260, at *3 ("viewing of public content on the provider's website is *not enough* to qualify as a consumer under the VPPA"). At bottom, Plaintiff's Complaint does not plausibly allege a "connection" between his alleged "sign[] up" and his "access[ to] the videos at issue" or include allegations that this subscription to the Website provided him "with any video viewing benefits beyond those accessible to any member of the public who had accessed the [Defendant's] website." *Golden*, 688 F. Supp. 3d at 162. Absent this connection, Plaintiff cannot establish that he is a consumer under the VPPA.

The court's recent decision in *Salazar v. National Basketball Ass'n*, 685 F. Supp. 3d 232, 244–45 (S.D.N.Y. 2023) is instructive. In *Salazar*, the plaintiff alleged that he "used his digital subscription to view videos on NBA.com or on the NBA app." *Id.* The Court found that the bald

---

[5] The VPPA's key provisions are intertwined. A protected "consumer" is defined as "any renter, purchaser, or subscriber of goods or services *from a video tape service provider*." 18 U.S.C. § 2710(a)(1) (emphasis added). The statute's liability clause applies only to "video tape service provider[s]" and forbids only disclosures of "personally identifiable information concerning a[] consumer of such [video tape service] provider." *Id*. § 2710(b)(1). The scope of protected "personally identifiable information" is limited to information about a person's receipt of "specific video materials or services." *Id*. § 2710(a)(3).

[6] Indeed, while Plaintiff alleges that he "subscribes to Defendant's Website," Compl. ¶ 8, and that he "submit[ted] his full name and email address" to "become a subscriber," *id.* ¶ 43, he has not pled that his or any alleged subscription required any payment.

allegation that plaintiff "used" his subscriptions to view videos on the website was not enough since the complaint demonstrated that, as here, "viewing the video does not require a viewer to be a subscriber or have an account to see the videos." *Id.* Furthermore, plaintiff had not alleged "that a user must log in to watch the video" or that "the video content [plaintiff] accessed was exclusive to a subscribership." *Id*. The Court concluded that "Plaintiff had the same access to videos on the NBA.com site as any other visitor to the site" and had failed to allege that he was a subscriber to audiovisual content. *Id.* Here too, Plaintiff has not plausibly alleged that any of Defendant's audiovisual content was solely available to subscribers or that his subscription was required to access such content. In short, Plaintiff's Complaint fails to link his alleged Website subscription with his alleged viewing of unidentified videos.[7] This failure is fatal.

*Salazar*, along with numerous other courts in this District, have dismissed VPPA actions, agreeing that to qualify as a "consumer" under the VPPA a person must rent, purchase, or subscribe to audiovisual materials, not just any product, and that newsletters or similar text-based offering simply do not come within the VPPA's ambit. *See, e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 96-100(S.D.N.Y. 2023) (plaintiffs had failed to allege they were video subscribers where newsletter subscription was not required to access videos or gave extra benefits to viewers); *Lamb*, 2023 WL 6318033, at *11-14 (subscribing to website did not qualify as being a "subscriber" under the VPPA where plaintiff had not adequately pled that subscription was "connected to [his] ability to access video content"); *Alex,* 2023 WL 6294260, at *3-4 (same); *Golden*, 688 F. Supp.

---

[7] In a blatant effort to manufacture a claim and avoid *Salazar*'s clear ruling, Plaintiff appears to claim that to watch more than three videos – which he describes as an "enhancing … viewing experience" – one must become a subscriber. Compl. ¶ 28. He is incorrect. There is no such limitation on the number of videos that can be viewed for free by navigating to the video page from the landing page. Schneier Decl. ¶¶ 3-6; Exs. B, C, D & E.

3d at 166 (plaintiff not subscriber because complaint did not allege that defendant had to sign up for defendant's app to access video content).

While *Salazar*, *Carter*, and *Golden* addressed plaintiffs who alleged they were "subscribers" based on subscriptions to email newsletters and viewed videos embedded in those newsletters, the *Lamb* court, which dealt with registration for a website, correctly concluded that this same "reasoning may logically extend to instances where plaintiffs allege that they created an account directly on the website." *Lamb*, 2023 WL 6318033, at *13. Similarly, in *Gardener v. MeTV*, the court held that the *Carter* plaintiffs were indistinguishable from the plaintiffs in that case—who had subscribed to defendant's website—because "both had subscriptions (newsletter or website) of a kind that were unconnected to their ability to access video content," and "[n]either set of plaintiffs paid for this privilege, made any commitment to do so, otherwise exchanged anything of value to do so, or received special access to certain content." 681 F. Supp. 3d 864, 869 (N.D. Ill. 2023). Thus, the court deemed the plaintiffs "subscribers to a website, 'not subscribers to audio visual materials.'" *Id*. (quoting *Carter*, 670 F. Supp. 3d at 99). Indeed, allowing Plaintiff to assert a VPPA claim would transgress the limitation imposed by Congress that a prospective VPPA plaintiff must be a "subscriber" to audiovisual content, a status that involves a commitment or relationship not found here. *See supra* at 14.

Plaintiff has no commitment to or relationship with any audiovisual material available on the Website. Rather, he has the same access and relationship to video content as any casual visitor to the Website. He is therefore not among the "consumers" of audiovisual content provided by video tape service providers that the VPPA protects. His claim should be dismissed.

### 3. Plaintiff's FID and Accessed URLs Do Not Constitute PII under the VPPA.

Plaintiff has not shown that his FID coupled with URLs of pages on the Website he purportedly visited constitute PII. The VPPA specifies that PII "includes information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(3).[8]

While the Second Circuit has not defined PII under the VPPA, New York federal courts have been persuaded by the standards adopted by the Third and Ninth Circuits that the "prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit an *ordinary person* to identify a specific individual's video-watching behavior." *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508 (JMA)(JMW), 2023 WL 6390055, at *2-3 (E.D.N.Y. Sept. 30, 2023) (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016), and citing *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017)) (emphasis added)), *appeal docketed*, No. 23 -7597 (2d Cir. Nov. 1, 2023); *see also Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022). Accordingly, the "information disclosed by a video tape service provider must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). For a plaintiff's information to properly constitute PII, the disclosure itself, without any additional information must be enough to identify a particular person. *Id.* at 183 ("The most natural reading of PII suggests that it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), which must itself do the identifying that is relevant for purposes of the VPPA

[8] Plaintiff has not identified any videos that he viewed or whose hyperlinks were allegedly shared with Meta. Instead, he relies upon a fictitious account created by his lawyer. Compl. ¶¶ 4, 33-37.

(literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties.").

The Complaint's allegations of PII hinge on a "URL containing the name of the audio visual material requested" and an "FID."[9] Compl. ¶ 30. Plaintiff claims that this information constitutes PII because if Meta takes another step and enters https://www.facebook.com/[FID], it can "identify the specific subscriber." *Id.* ¶ 38. Critically, while Plaintiff alleges he had a Facebook profile, *id.* ¶ 45, Plaintiff has *not pled* that his FID, even inserted into the hyperlink, would show a Facebook account that contains his name, his pictures, or other similarly identifying information. *Solomon* and *Wilson* are instructive as to why this failure is critical. I n *Solomon*, the defendant argued that "the mere fact that Plaintiff's FID was disclosed along with the video titles she accessed is, standing alone, insufficient because Plaintiff has not identified any personal information that can be seen on her public Facebook profile." 2023 WL 6390055, at *2-3. The Court concurred, noting that "[t]he complaint does not say anything about the information or photos found on Plaintiff's public Facebook profile page." *Id.* (dismissing VPPA claim because "the complaint does not adequately allege that their FIDs resulted in the sharing of any personal information"). Similarly, in *Wilson*, the court dismissed a VPPA claim because linking an identification number to a user required a third party to pair that identification number with a user's

[9] As Plaintiff effectively acknowledges, the FID itself does not disclose any information about him. Rather, the FID only shows his information if another step is taken: the FID is entered into a URL. But "information which is not otherwise PII [cannot] somehow become PII because of the potential, however remote, of a third party to 'reverse engineer' a disclosure using data gathered from other sources." *Disney*, 152 F. Supp. 3d at 183 (alteration added) (emphasis added). And here, Plaintiff has not shown that an "ordinary person" would have access either to the FID or knowledge of the hyperlink. *Solomon*, 2023 WL 6390055, at *2-3. As the court found in *Disney*, "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Id.* at 181. As such, here, the fact that a third party can take an intermediate step and enter the FID into a hyperlink that could take them to Plaintiff's Facebook profile does not render it PII.

profile page. 598 F. Supp. 3d at 91-92. Plaintiff, however, had failed to allege the information actually on his page or show how a third party could use that information to identify him. *Id.* Accordingly, the court could not infer a "firm and readily foreseeable" connection between the information disclosed and [plaintiff's] identity," mandating dismissal. *Id.* at 92. Similarly, here, while Plaintiff pleads that Meta could insert his FID into a hyperlink and reach his Facebook account, he does not offer a single allegation that his Facebook account shows his name, photograph, or any other identifying information that could link *him,* Mark Lee, to the videos on the Website he allegedly viewed. This pleading failure dooms Plaintiff's attempt at establishing that his FID constitutes PII.

**4. Defendant Did Not "Knowingly Disclose" Plaintiff's PII.**

The VPPA prohibits only a video tape service provider "who knowingly discloses, to any person" a consumer's PII. 18 U.S.C. § 2710(b). Plaintiff, however, fails to plausibly allege that Defendant *disclosed* his PII and that any such disclosure was *knowingly* done.

**First,** Plaintiff has not alleged a single fact showing that any of *his* information was disclosed. While Plaintiff broadly pleads that "Defendant disclosed to Meta his FID coupled with the title of the prerecorded audio visual material he requested or obtained and the URLs to access that material," Compl. ¶ 45, these conclusory allegations fail to pass muster, particularly since Plaintiff offers no facts showing the videos he allegedly watched and that any transmissions of PII occurred. Underscoring this deficiency, while Plaintiff's allegations as to the alleged disclosure of his own information are pled with implausible thinness, he manages to scrape together more facts for the fictional "Kendra Marta" account created by his lawyer. These facts include alleged screenshots of the Pixel's transmissions of Kendra Marta's information and allegations regarding the same. Compl. ¶¶ 4, 33-37. Tellingly, no such facts are provided for Plaintiff. Because Plaintiff

has not pled any specific facts about the disclosure, knowing or otherwise, of *his* PII, the VPPA claim must be dismissed.

**Next**, a VPPA claim cannot survive where the defendant merely did some act that led to PII disclosure by someone else. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066-67 (9th Cir. 2015) (rejecting VPPA claim where disclosure was controlled by plaintiff, not defendant). Plaintiff offers only conclusory allegations that *Defendant* was the party actually disclosing his PII. But these allegations are refuted by his sparsely pleaded facts, which set forth that it was the *Pixel* that disclosed any PII. For example, Plaintiff alleges that the Pixel "transmits PII to Meta regarding the online website activities." Compl. ¶ 3. He also pleads that "the Pixel Defendant installed discloses personally identifiable information about the subscriber to Meta, including information identifying the prerecorded audio visual materials the subscriber requests or obtains." *Id.* ¶ 29. Even where Plaintiff attempts to make Defendant the agent of the purported disclosure, he still cannot avoid that any disclosure is accomplished "via the Pixel." *Id.* ¶¶ 5, 6, 21. In short, the Complaint makes clear that it is the *Pixel*—not Defendant—effectuating any purported disclosure and that such disclosures would only be possible through Plaintiff's own decisions to create a Facebook account and browse the Website while logged into Facebook.

**Finally,** even if Defendant disclosed Plaintiff's PII to Meta (which it did not), such a disclosure was not done "knowingly." To violate the VPPA, a defendant must "knowingly disclose[]" PII. 18 U.S.C. § 2710(b)(1). As explained in *In re Hulu Privacy Litigation*, "'knowingly' connotes actual knowledge" or "consciousness of transmitting the private information." 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). For information to be "knowingly disclosed," "[i]t is not enough, as the plaintiffs suggest, that a disclosure be merely 'voluntary' in the minimal sense of the defendant being 'aware of what he or she is doing." *Id.* Moreover,

"knowingly" "does not merely mean transmitting the code." *Id.* Therefore, "[i]f [defendant] did not know that it was transmitting both an identifier and the person's video watching information, then there is no violation of the VPPA." *In re Hulu Priv. Litig.*, No. C 11 03764, 2014 WL 1724344, at *15 (N.D. Cal. Apr. 28, 2014).

Here, the Complaint alleges, in conclusory manner, that Defendant's knowledge is "evidenced by . . . the inherent purpose and function of the Pixel," "that Defendant coded its pixel to collect information beyond the Pixel's default categories [i.e., Button Click data]," and that "Defendant benefitted from the Pixel's purpose." Compl. ¶¶ 31-32. These allegations are insufficient. Plaintiff does not allege that Defendant *knew* that the Pixel was specifically transmitting an FID. *See In re Hulu Priv. Litig.*, 2014 WL 1724344, at *15. Even if Defendant did know that an FID was being transmitted by the Pixel generally, he still does not allege that Defendant knew that someone could put the FID into a hyperlink to identify a user. Nor does Plaintiff plead that Defendant knew whether a user had or was logged into Facebook and therefore knew that an FID or any viewing information was being disclosed to Meta. Plaintiff's bare allegations about the Pixel's inherent purpose, Defendant's benefit thereof, or a quirk in the coding simply cannot establish that Defendant *knowingly disclosed* Plaintiff's PII (as opposed to a few lines of code).

## IV. In the Alternative, This Case Should Be Stayed Pending the Second Circuit's Decision in *Salazar.*

Alternatively, any further proceedings in this litigation should be stayed pending the Second Circuit's decision in *Salazar v. National Basketball Ass'n*, Case No. 23-1147 (2d Cir.). Briefing on the appeal is complete, and oral argument was held on April 2, 2024, but the Court has not yet issued a ruling.[10] In *Salazar*, the Second Circuit will decide "[w]hether the District Court

[10] Plaintiff's counsel declined to consent to a stay. Schneier Decl. ¶ 7.

erred in finding that Plaintiff would not be able to state a claim under the VPPA because Plaintiff did not meet the definition of 'consumer' as defined by the VPPA." Case No. 23-1147, Dkt. 24-3 Form C, Addendum B. The Second Circuit's analysis and decision will be instructive on whether Plaintiff is a "subscriber" under the VPPA, and this case should be stayed pending that decision.

Courts consider five factors in determining whether to grant a stay: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). "[A] court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action," even where "the issues…are [not] necessarily controlling on the action before the court." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (citation omitted). Numerous courts in this District have concluded that the balance of interests favors staying ongoing VPPA actions pending the Second Circuit's forthcoming *Salazar* decision. *See, e.g.*, *Lamb v. Forbes Media LLC*, No. 22-cv-06319-ALC, 2024 WL 1364678, at *1 (S.D.N.Y. Apr. 1, 2024); *Addi*, 2024 WL 2802863, at *5; *Joiner v. NHL Enters., Inc.*, No. 23-CV-2083 (LAK) (BCM), 2024 WL 639422, at *1-2 (S.D.N.Y. Feb. 15, 2024); *Leslie v. Thomson Reuters Corp.*, No. 22 Civ. 07936 (JHR), 2023 WL 6173511, at *2 (S.D.N.Y. Sept. 22, 2023).

As to the first and second factors, when deciding to *sua sponte* grant a stay in *Leslie v. Thomson Reuters*, the court found that "both parties stand to benefit from gaining clarity on the scope of the VPPA before engaging in potentially expensive—and uncertain—litigation." 2023 WL 6173511, at *2. "While a stay may delay resolution of the pending motion, 'delay does not, without more' result in 'undue prejudice.'" *Id.* at *2 (citing *McCracken v. Verisma Sys., Inc.*, No.

14 Civ. 6248 (MAT), 2018 WL 4233703, at *4 (W.D.N.Y. Sept. 6, 2018)). For the remaining factors, as the *Leslie* court found that a stay pending the Second Circuit's decision in *Salazar* "would serve the interests of the courts, persons not parties to this litigation, and the public" since it would be "an inefficient use of time and resources of the Court and the parties to proceed in light of a pending Second Circuit decision that will significantly impact this litigation." *Id.* (quoting *Hoover v. HSBC Mortg. Corp. (USA)*, No. 13 Civ. 149 (MAD), 2014 WL 12781322, at *2 (N.D.N.Y. July 9, 2014)). Similarly, the *Lamb* court observed that "[t]he Second Circuit's decision in *Salazar* could contain guidance that would allow this litigation to proceed on a reasonable and efficient basis." 2024 WL 1364678, at *2 (citation and internal quotation marks omitted). And "[w]hile the *Salazar* case 'may not settle every question of fact and law before this Court,' it will 'in all likelihood . . . settle many and simplify them all." *Id.* (quoting *Sikhs for Just.*, 893 F. Supp. 2d at 622). Likewise, in *Joiner*, the court found that "a stay would serve the goal of judicial efficiency." 2024 WL 639422, at *2. This Court should similarly grant a stay and await guidance from the Second Circuit.

The balance of interests favors granting a stay pending the Second Circuit's decision in *Salazar*.

## CONCLUSION

Defendant Springer Nature respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) and (b)(6) or, in the alternative, a stay of proceedings pending the Second Circuit's decision in *Salazar*.

Dated: August 23, 2024

Respectfully submitted,

*/s/ Sharon L. Schneier*

Sharon L. Schneier
Nimra H. Azmi
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Email: sharonschneier@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I, Sharon L. Schneier, hereby certify that on August 23, 2024, a copy of the foregoing document was filed electronically and served by e-mail to all parties of record via ECF.

*/s/ Sharon L. Schneier*
Sharon L. Schneier