**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT NEW YORK**

---------------------------------------------------------------------x

MARK LEE, on behalf of himself and all others similarly situated,

Plaintiff,

- against -

SPRINGER NATURE AMERICA, INC.,

Defendant.

---------------------------------------------------------------------x

Case No. 1:24-cv-04493-LJL

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT SPRINGER NATURE AMERICA, INC.'S MOTION TO DISMISS THE COMPLAINT**

Sharon L. Schneier
Nimra H. Azmi
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Email: sharonschneier@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendant*

## INTRODUCTION

Plaintiff's Opposition ("Opposition" or "Opp.") to Defendant Springer Nature's Motion to Dismiss, or in the alternative, to stay further proceedings ("Motion to Dismiss") does not cure the fundamental defects in the Complaint.[1] Plaintiff's attempted use of the VPPA—a statute enacted in the 1980s as a means of regulating the delivery of important news content—seeks to stretch the VPPA far beyond its intended scope and should not be triggered simply because someone allegedly watched a fourth video on a website. Despite Plaintiff's attempts to rehabilitate his VPPA claim, his allegations fall short of stating a claim because: (a) he fails to specify how/when he allegedly subscribed to the *Scientific American* Website, what specific video materials he watched, and how the data that was collected from him revealed his PII, (b) Springer Nature is not a video tape service provider within the meaning of the VPPA, (c) Plaintiff is not a "subscriber" to the Website; indeed he admits that he was not required to become a "subscriber" to watch three videos and he does not allege he watched more, and (d) he fails to plausibly allege that Springer Nature knowingly disclosed his PII.[2] Finally, Plaintiff's leave to amend should be denied because he has not identified what he hopes to remedy by amendment.

---

[1] Given that the Second Circuit issued its decision in *Salazar v. Nat'l Basketball Ass'n*, No. 23-1147, 2024 WL 4487971 (2d Cir. Oct. 15, 2024) last week, the request for alternative relief is moot. Defendant's Opposition to Motion to Strike, which is being filed herewith, addresses Plaintiff's argument that the Schneier Declaration and the attached exhibits may not be considered by the Court. Opp. at 9 n.7.

The Reply Brief uses the abbreviations from the moving papers.

[2] In *Salazar*, the Second Circuit held that when alleged with sufficient specificity, a well-pled VPPA claim bears some relationship to the common law analogue of public disclosure of private facts to satisfy Article III standing. *See Salazar*,2024 WL 4487971, at *5. Plaintiff's claim, however, lacks the particularity the Second Circuit requires in accordance with the Supreme Court's decision in *TransAmerica*. For example, the Complaint does not set forth when he allegedly created an account – which presumably did not happen until he watched a fourth video – and any videos that he watched where is PII was allegedly disclosed. As such, Plaintiff has not established Article III standing.

The Complaint should be dismissed with prejudice in its entirety for its failure to state a claim under the VPPA.

## ARGUMENT

### I. THE COMPLAINT FAILS TO PLEAD A VPPA VIOLATION

#### A. Plaintiff Is Not a "Video Tape Services Provider" Under the VPPA.

The Opposition fails to show that Springer Nature is a "video tape service provider" within the meaning of the statute. Plaintiff acknowledges – relying on the Website that he otherwise seeks to sidestep – that *Scientific American* is primarily a news organization. Opp. at 1, 9-10. In *Salazar* the Second Circuit made clear that the VPPA's reach is not "boundless." *Salazar*, 2024 WL 4487971, at *12. The Court made clear that its decision did not sweep companies where video materials are offered only for marketing purposes and/or are not "*part* of the provider's book of business" and should therefore not be considered a "video tape service provider" under the statute. *Id.* This is in keeping with *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017), where the court noted that the phrase "engaged in the business" "connotes 'a particular field of endeavor,' i.e. a focus of defendant's work." *Id.* (citations omitted).[3] That bar is simply not satisfied here. For example, in contrast to the approximately 175 new pages of non-

[3] Plaintiff glosses over the court's description of the Smart TV's primary purpose: it came installed with apps "designed to enable consumers to seamlessly access [streaming] content in their homes." *In re Vizio*, 238 F. Supp. 3d at 1222. Plaintiff relies on several out-of-jurisdiction cases to argue that *Scientific American* is a "video tape service provider" as defined in the VPPA. Moreover, the cited cases are not persuasive and should not be followed by this court. In *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 314 (D. Mass. 2022), for example, the District of Massachusetts concluded that because Gannett did not challenge in *Yershov* that it was a video tape service provider, it would follow the First Circuit's conclusion that it was. *Ambrose v. Bos. Globe Media Partners LLC,* No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022). And, in *Sellers v. Bleacher Rep., Inc.,* No. 23-CV-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023), the court noted it was a "close[] call" whether Bleacher Report the VPPA applied since the VPPA does not apply to a retail website that provides audio visual media that is incidental to their primary business.

video content it publishes *monthly*, as the Video Page shows, *Scientific American* has published only 15 new videos *this year* as is evident from a review of the Website. Schneier Decl. Ex. E. An examination of the Website also indicates that its free video content constitutes a mere 1% of its total content. *Id.* Ex. C. This negligible amount is certainly not even the "dabble" the Second Circuit contemplated. Applying the VPPA's protections here—where it is clear that *Scientific American* is a longstanding scientific news organization with very limited video content related to its news articles—makes little sense.[4] *See Id.* Exs. D & E.

Plaintiff's efforts to distinguish *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2003) also miss the mark. *See* Opp. at 10. The plaintiff in that case, like Plaintiff here, attempted to argue that the AARP was a video tape service provider because it created its own video content that was posted to its website. The court, however, did not find "plausible" that any company that creates its own video content, however ancillary to the company's purpose, is "engaged in the business of delivering audio visual content." *Markles*, 689 F. Supp. 3d at 728. That same logic applies here, and *Salazar* does not hold otherwise.

Plaintiff has not alleged that Springer Nature is a video tape service provider under the VPPA, and his claim must therefore be dismissed.

### B. Plaintiff Does Not Allege Facts Establishing That He is a "Subscriber"

Plaintiff acknowledges that to show he is a subscriber, he must allege facts establishing "an exchange between subscriber and provider whereby the subscriber imparts money and/or

[4] Publications like *Scientific American*, that are focused on delivering news and provide limited videos are not video tape service providers under VPPA since they do not focus on conveying audio visual materials similar to the movies that the drafters of the VPPA had in mind. Indeed, Plaintiff does not address the federal government's acknowledgement that the VPPA does not apply to a news organization. United States of America's Memorandum in Support of the Constitutionality of the VPPA, at 18, *Stark v. Patreon, Inc.*, Noi. 3:22-cv-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022), ECF No. 49-1.

personal information in order to receive a future and recurrent benefit." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015); *see also Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015).[5] Plaintiff also acknowledges that the videos Plaintiff allegedly viewed are freely accessible—at no cost and requiring no subscription or account—to any user. *See* Compl. ¶ 28. It is also clear that this requirement is not met merely by viewing videos available on a website without a subscription. *See* Motion to Dismiss at 14-15. The Second Circuit's decision does not change this requirement. *See Salazar,* 2024 WL 4487971, at *11. The Opposition Brief concedes that Plaintiff was merely watching free videos, Opp. at n.4, and when he did open an account, he only provided limited information, *i.e.* his name and email. This does not make Plaintiff a subscriber under the VPPA.

While Plaintiff admits he provided nothing more than his name and email address to *Scientific American*, he claims he had to become a subscriber in order to "enhance" his video-viewing experience to watch four or more videos (again, all for free). Compl. ¶ 28; Opp. at 11 n.9.[6] The Complaint provides no allegations supporting that he ever *did* watch such videos. As Judge Cote held "essential information for a VPPA claim" includes "at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were

---

[5] While *Salazar* made clear—and Defendant never otherwise argued—that the lack of any payment does not ipso facto deny a plaintiff "subscriber" status under the VPPA the lack of payment further highlights the weakness of Plaintiff's association with Defendant.

[6] While Plaintiff urges the Court to disregard Defendant's Exhibits D & E—the Website's Video pages (and the hyperlinks from the Schneier Declaration thereto)—and accept as fact his unsupported allegation that "a visitor to the Website was prohibited from watching unlimited video content absent a subscription." Opp. at 12, the Court is under no obligation to accept facts that are wholly inconsistent with the Website. *See Wu v. Jensen-Lewis Co.,*, 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018); *Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195, 213 (S.D.N.Y. 2023), *appeal filed,* (23-1340 Sept. 28, 2023). *See* Opposition to Motion to Strike at 6, 9.

requested or obtained by the website visitor; and (4) whether the website visitor 'requested or obtained' any videos at all, or instead merely read an article on the webpage." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). Using talismanic words or parroting statutory language—without facts—is simply not enough, particularly where, as here, Plaintiff acknowledges that he was not a "subscriber" unless he chose to watch a fourth video. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a "formulaic recitation of the elements of a cause of action will not do.").

*Salazar* only affirms that Plaintiff's VPPA claim is unsalvageable on its face. There, the Second Circuit made clear that to qualify as a "subscriber"—particularly when no monies are transmitted—the plaintiff must have provided a *significant* amount of personal information (*i.e.*, email address, cookies associated with plaintiff's device, and an IP address through which the NBA could identify his city, zip code, and his physical location for access) to form a subscriber relationship. *See Salazar*, 2024 WL 4487971, at *15. By contrast, the information Plaintiff pleads he submitted—a name and email address, Compl. ¶ 43—falls well-short of the Second Circuit's description of the type of "not insignificant" information that creates a subscriber relationship under the VPPA. *See Salazar*, 2024 WL 4487971, at *15. Unlike the plaintiff in *Salazar*, Plaintiff does not plead that his name or email address identified his city, zip code, or physical location, nor does he plead that he exchanged cookies for access. *See generally* Compl. Plaintiff cannot manufacture a claim premised solely on allegedly providing a name, an email address, and watching free videos, because that cannot satisfy the requirement the Second Circuit has set for adequate consideration.[7] Plaintiff is not a subscriber.

[7] The Opposition asserts that the VPPA does not even require that a plaintiff subscribe to audiovisual goods. While *Salazar* has now clarified that a subscription to any "good or service"

Plaintiff acknowledges that a visitor could freely watch at least three videos on the Website without providing any information. Opp. at 2.[8] While the Complaint alleges that Plaintiff "requested or obtained prerecorded audio visual materials through his subscription to the Website," *see* Compl. ¶ 44, he acknowledges that *no* subscription was required unless a user watched more than three videos, *id.* ¶ 28—the amount he pleads a subscription was required to access.[9] Absent such an allegation, Plaintiff cannot connect, as he must, his subscription to his viewing of restricted video content. This failure is fatal. *See Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2024 WL 4149219, at *6 (S.D.N.Y. Sept. 11, 2024) (dismissing VPPA claim where plaintiff had pled access to video content "that non-subscribers could just as easily access on the same website—does not make her a subscriber to video content."); *Martin*, 657 F. Supp. 3d at 277 ("a claim under the VPPA requires that the information disclosed identify a person 'as having requested or obtained specific video materials or services from a video tape service provider'"). Plaintiff should not be rewarded simply because he invoked the term "enhance," Mot. at 28, when he alleges no facts that show he even benefited from this so-called "enhancement" of watching more than three videos.[10] This factual gap sinks his claim.

---

may suffice under the VPPA, as set forth *supra*, at 5-6, the information Plaintiff provided does not satisfy the threshold set by the Second Circuit for adequate consideration.

[8] This admission limits his prospective class to only those individuals who watched more than three videos on the Website.

[9] This deficiency is not merely abstract. The Court should be aware that Defendant has been unable to locate a record of a *Scientific American* account for Mark Lee. It has only uncovered an email address—but no name—that was only provided in May 2024, which was shortly before he filed the Complaint. Moreover, Scientific American has not been able to locate any evidence that Lee watched any videos on its website.

[10] In *Sutton v. TED Found., Inc.*, No. 23 CIV. 9219 (DEH), 2024 WL 4167342, at *6 (S.D.N.Y. Sept. 12, 2024), plaintiffs argued that their TED accounts "provid[ed] with access to restricted content in that they are able 'to download videos and play them offline.'" But the court disagreed, finding that the "ability to download videos is different in kind from having 'special access to certain content' unavailable to non-account-holders." *Id*. As the *TED* Court held, establishing

Plaintiff is not a "consumer" within the meaning of the VPPA, and his claim should be dismissed.

**C. Plaintiff Has Not Pled That His FID Constituted PII**

Plaintiff's Opposition does not correct his failure to plead facts showing that his FID alone is PII under the VPPA. While Plaintiff argues that the Pixel's transmission of an FID alone is enough to identify "*Plaintiff* Mark Lee," Opp. at 14 (emphasis in original), he does not dispute that he has not alleged *what* was on his Facebook profile that would actually make him identifiable as "*Plaintiff* Mark Lee." Rather, Plaintiff claims that under the First Circuit's analysis, an FID alone is enough because it is information that is "reasonably and foreseeably likely to reveal which videos a person has obtained." *Golden*, 688 F. Supp. 3d at 159 (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 483, 486 (1st Cir. 2016) (quotations removed)). He is mistaken on the law and the facts.[11]

Federal courts in this district have followed the Third and Ninth Circuit's approach which states that a "prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit an *ordinary person* to identify a specific individual's video-watching behavior." *Solomon v. Flipps Media, Inc.*, No. 22-CV-5508 (JMA)(JMW), 2023 WL 6390055, at *2-3 (E.D.N.Y. Sept. 30, 2023) (plaintiff "needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim"), *id.* at *4, *appeal filed* (23-7597 Nov. 1, 2023).[12] As the Ninth Circuit found

---

"special access to certain content," is not an overall "enhancement" to the viewing experience sufficient to transform a plaintiff into a "subscriber" under the VPPA.

[11] Plaintiff argues that "transmission of a video's title adjacent to a FID" constitutes disclosure. Opp. at 14. Yet, the Complaint fails to include a single allegation of any video that *he* watched and which URLs and titles the Pixel allegedly transmitted Meta. *See generally* Compl.

[12] While Plaintiff quotes *Golden* to argue that courts have "uniformly" held that FID are PII, Opp. at 16, the *Solomon* and *Ghanaat* decisions bely this claim.

in *Eichenberger v. ESPN, Inc.*, "[t]he 'ordinary person' test better informs video service providers of their obligations under the VPPA" and "fits most neatly with the regime that the VPPA's enacting Congress likely had in mind." 876 F.3d 979, 985 (9th Cir. 2017).

Plaintiff's Opposition effectively concedes that his name and email are not PII and that he has alleged no facts that his public Facebook account contains any identifying information. Opp. at 14, 17. Without doing so, he cannot state a claim. *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (dismissing VPPA claim on grounds that plaintiff had not pled that FID constituted PII because "they do not allege their Facebook pages contain any personal information, such as their names or email addresses."). That common sense proposition is reflected in *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82 (S.D.N.Y. 2022), where Judge Rakoff held that the plaintiff had failed to plead her Triller identification number was PII because the complaint "contain[ed] no allegation as to what information was actually included on Wilson's profile nor how that information could be used by a third party to identify Wilson." *Id.* at 92. Here, too, Plaintiff's Opposition argues, without support, that his Facebook profile identifies him. Opp. at 14, 17. And while Plaintiff tries to fearmonger that the "ordinary person" standard would require "infallible" or "certain" identification, Opp. at 16, this standard simply requires that the information disclosed actually be "personally identifiable" as to Plaintiff—the entire purpose of the VPPA.[13]

[13] Even under *Yershov* Plaintiff's allegations fall short. Again, *Wilson* is instructive. While analyzing the plaintiff's claim under *Yershov*, the court concluded that the complaint did not plead any facts about information on her profile or how that information could be used to identify her and therefore lacked "any allegation that would allow the Court to infer a 'firm and readily foreseeable' connection between the information disclosed and Wilson's identify [sic], thus failing to state a claim under the VPPA even assuming the broader approach set out in *Yershov*." *Wilson*, 598 F. Supp. 3d at 92. Because there is no disagreement that Plaintiff has not pled a single fact about the information on his profile, this Court, like the *Wilson* court, cannot infer the "firm and readily foreseeable" connection *Yershov* requires.

Plaintiff's failure to plead the disclosure of his PII under either standard requires dismissal.

**D. Plaintiff's Allegations Do Not Show "Knowing" Disclosure of Plaintiff's PII**

Plaintiff's Opposition claims that simply installing the Pixel constituted specific "knowledge" of the waterfall of effects to follow, including the Pixel's purported disclosure of FID. *See* Opp. at 17-18.[14] But the only non-speculative fact Plaintiff alleges is that Defendant installed the Pixel on its Website. That is it and that is not enough. *See Mollett v. Netflix, Inc.*, No. 5:11-CV-01629-EJD, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012) (plaintiff must "allege facts giving rise to a reasonable inference that [the defendant] knowingly or willfully disclosed PII to someone other than the consumer."), *aff'd,* 795 F.3d 1062 (9th Cir. 2015).

While Plaintiff argues that *In re Hulu Priv. Litig.* is inapplicable because it is a decision on a summary judgment motion, the court's definition of "knowing" is instructive. The court determined that "knowingly" requires more than "voluntariness" but mandates *specific knowledge* as to exactly what was being transmitted. No. C 22-03764 LB, 2014 WL 1724344, at *15 (N.D. Cal. Apr. 28, 2014). Plaintiff's conclusory and generalized allegations about Defendant knowing that the Pixel would provide Meta with information about its users' interactions with "web-based material," Opp. at 17, misses the mark. Indicative of this failure, Plaintiff does not plead that Springer Nature knew or had control over visitors being logged into Facebook—without which the Pixel could not transmit any information. Moreover, while Plaintiff's rebuttal to Springer Nature's argument that any disclosure was accomplished by the *Pixel*, not Springer Nature, Opp.

[14] Plaintiff argues that his Complaint contains "fulsome" allegations that "Defendant was aware that its use of the Pixel would provide Meta with information" about its users' interactions with web-based material. Opp. at 17 (citing Compl. ¶¶ 24-28). Plaintiff vastly overstates his allegations, which merely repeat that Defendant purposefully installed the Pixel, that it benefited from the collection of data, and describe Meta's alleged advertising practices. Underscoring the deficiency of his allegations, Plaintiff never even pleads that he was signed into his Facebook profile while watching any videos.

at 19, simply beats the drum that Springer "knowingly" installed the Pixel. He ignores that this claim cannot survive where the defendant merely did some act that led to PII disclosure by someone else. *See Mollett*, 795 F.3d at 1066-67 (rejecting VPPA claim where disclosure was controlled by plaintiff, not defendant). Plaintiff's attempt to dress up the factual allegation that Defendant installed the Pixel with speculation that this constituted a "knowing" choice to disclose PII, Opp. at 19, cannot overcome the failure of his pleading.

## II. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Plaintiff should not be permitted to amend his Complaint. Plaintiff fails to identify any grounds on which he seeks to amend his Complaint. That alone warrants denial. *See United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2018 WL 11217206, at *1 (S.D.N.Y. Jan. 31, 2018). Moreover, leave should be denied because of the undue burden it would cause Defendant. In evaluating whether leave to amend would result in undue prejudice, courts consider whether the proposed amendment would cause the non-moving party to incur significant expense or delay resolution of the dispute. *See Lesnik v. Lincoln Financial Advisors Corp.*, 1:18-cv-03656 (PAC), 2019 WL 6169971, at *2 (S.D.N.Y. Nov. 20, 2019). Following the issuance of the Second Circuit's *Salazar* decision, undersigned counsel asked Plaintiff if Plaintiff wanted to amend before Defendant expended time and money on updating its reply brief; Plaintiff declined. Because of the undue burden it would cause Defendant to have to litigate this action from the start, he should be denied leave to amend.

## CONCLUSION

For the foregoing reasons and for those set forth in its Motion to Dismiss, Defendant Springer respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

Dated: New York, New York
October 23, 2024

Respectfully submitted,

*<u>/s/ Sharon L. Schneier</u>*
Sharon L. Schneier
Nimra H. Azmi
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel: (212) 489-8230
Email: sharonschneier@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendant*