**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEE, individually<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINGER NATURE AMERICA, INC.,<br><br>Defendant. | Case No. 1:24-CV-04493-LJL<br><br>Hon. Lewis J. Liman<br><br>**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff's Complaint, Docket No. 1 ("Complaint") alleges Springer Nature America, Inc. ("Defendant" or "Scientific American") operates the website www.scientificamerican.com where it publishes videos. To view more than three videos, visitors to the website were required to register and subscribe by providing personal information to Defendant. Becoming a subscriber removed all limitations and provided unlimited access to its video library. Every time visitors – subscribers or not – request or obtain videos from Defendant's website, Defendant shares their video-watching behavior with Meta in violation of the VPPA. *See* Complaint.

Defendant moved to dismiss Plaintiff's Complaint in this case. Docket No. 13–14 ("Motion"). After Plaintiff filed his opposition, but before Defendant filed a reply brief, the Second Circuit issued its opinion in *Salazar v. National Basketball Association*, 2024 WL 4487971 (2d Cir. Oct. 15, 2024), which directly addresses issues Defendant raised in its Motion. In light of this decision, the Parties agreed to an alternative briefing schedule, permitting Defendant an additional week to consider *Salazar* in drafting its reply in support of its motion to dismiss, Docket No. 25 ("Reply") and permitting Plaintiff to file this sur-reply, which the Court granted. Docket No. 24.

*Salazar* squarely addresses two matters at issue here: (i) Whether Defendant qualifies as a video tape service provider; and (ii) whether Plaintiff qualifies as a "consumer" by dent of his subscription to Defendant's website. Defendant's Motion should be denied, because *Salazar* makes clear that the answer to both of these questions is yes.

## I. <u>Preliminary Issues</u>

As a threshold issue, Defendant's brief continues to offer arguments that were fully resolved in Plaintiff's favor by *Salazar*. First, Defendant clings to its argument that this Court lacks jurisdiction under Article III, Reply. at 1 n.2., despite the Second Circuit's unequivocal holding that a website operator's conduct of disclosing personally identifiable information to Meta (an unauthorized third party) through operation of the Meta Pixel causes injury sufficient to confer standing. *Salazar*, 2024 WL 4487971, at *7 ("[W]e similarly have 'no trouble' holding here that Salazar's alleged harm is sufficiently concrete to withstand dismissal."). As in *Salazar*, Plaintiff Lee argues that Scientific American discloses "users' personal viewing information to Meta, which then harnesses that information 'to show the user targeted ads'—ads that Meta chooses for its own commercial purposes, not [Scientific American's] or the user's purposes." *Id.* at *8. Defendant's arguments to the contrary should be summarily rejected.

Likewise, Defendant repeatedly suggests in its opening brief and in its Reply that offering free video content somehow diminishes the applicability of the VPPA. Again, *Salazar*'s fulsome rejection of payment as necessary for the subscriber-video tape service provider relationship is controlling. *Id.* at 15. And finally, Defendant again asserts that Plaintiff "seeks so stretch the VPPA far beyond its intended scope" due to its age, even though *Salazar* makes clear the VPPA "is no dinosaur statute." 2024 WL 4487971, at *16 ("Our modern means of consuming content may be different, but the VPPA's privacy protections remain as robust today as they were in 1988.")

## II. <u>Defendant Is A Video Tape Service Provider.</u>

As part of its book of business Scientific American produces and publishes videos on its web property where they can be accessed by website visitors—subscribers and non-subscribers alike. Compl. ¶¶ 9, 33, 44, 59. Defendant's production of video materials for its website audience is an ongoing endeavor—it has published an additional fifteen videos this year alone. Reply at 2–3. Defendant's website hosts enough video content that Defendant created a landing page specifically for videos—the "Video Page"—which hosts all videos in Defendant's library. *Id.* at 3. This conduct plainly qualifies Defendant as a video tape provider. Indeed, despite Defendant's protestations, "Congress cast a wide net in defining 'video tape service provider[.]'" *Salazar*, 2024 WL 4487971, at *12, and accordingly, the definition of a videotape service provider is "broad" and "expansive," *see Salazar*, 2024 WL 4487971, at *11–12, encompassing "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The unambiguous language of the statute and *Salazar*'s guidance make clear Defendant is a video tape service provider.

Defendant's primary argument in support of is Motion is that its video production and publication is but a small portion of its business, Reply at 2–3. But as noted above, in the wake of *Salazar*, it is crystal clear that a video tape service provider "is not limited to entities that deal *exclusively* in audiovisual content; rather, audiovisual content need only be a *part* of the provider's book of business." *Salazar*, 2024 WL 4487971, at *12 (emphasis in *Salazar*). "Thus, by its plain terms, the statute applies equally to a business dealing primarily in audiovisual materials (think Blockbuster) and one dealing in primarily *non*-audiovisual materials (think a general store that rents out a few movies)." *Id.* Under *Salazar* there can be little dispute that Defendant qualifies as

a video tape service provider and is subject to the VPPA. Defendant's puerile argument that *Salazar* limits the scope of the VPPA fails: *Salazar*'s statement that the VPPA is not "boundless" has nothing to do with the breadth of what constitutes a video tape servicer provider, but only refers to the limits that exist within the definition of "personally identifiable information." And its example of a "general store that rents a few videos" presents a business whose connection to videos is far more removed from Defendant's video practices and yet is still subject to the VPPA. *See id.*[1]

Indeed, Scientific American's website alone, which possesses a "Video Page" that hosts the video content it produces, proves Defendant constitutes a videotape service provider and its subscribers are protected by the VPPA.

### III. <u>Plaintiff Is A Consumer, Protected By The VPPA</u>

Plaintiff qualifies as a consumer because he provided his valuable personal information to Defendant in exchange for unlimited access to Defendant's full library of video material. Plaintiff obtained his subscription over ten years ago, Compl. ¶ 42, and he uses his subscription to access video materials. *Id.* ¶ 44. To obtain his subscription, Plaintiff provided Defendant with his name and email address. *Id.* ¶ 43. Without his subscription, Plaintiff's access to Defendant's video library was limited to three videos. *Id.* ¶ 28. Plaintiff has a Facebook profile, which has existed for the entire period that he has been a subscriber of Defendant's. *Id.* ¶ 45.

First and foremost: *Salazar* completely changed the calculus as it relates to the requirements to establish the subscriber-video tape service provider relationship. No longer must a user have subscribed to an *audio visual* good or service to qualify as a subscriber—indeed, the Second Circuit thoughtfully relied on the language of the VPPA itself to recognize that imposing

---

[1] "[B]y using expansive words like 'any' and 'or,' Congress codified a [] definition that 'bespeaks breadth.'" *Salazar*, 2024 WL 4487971, at *10.

such a limitation was unsupported by the text of the statute and likewise defeated its purpose. 2024 WL 4487971, at *14-15. Thus, any individual who provided his or her personal information exchange for *any* good or service offered by Defendant (including its newsletter) is one of its subscribers. *Id*.

Plaintiff alleged he provided his personal information to Defendant to become a subscriber, and he watched videos using his subscription. S*ee* Compl. ¶ 43-44 and Defense Exhibit D, Decl. at 26 (illustrating a large red "Subscribe" button). To be sure: Plaintiff was a subscriber pre-*Salazar* because his provision of personal information was to obtain access to the good or service of unlimited access to Defendant's video library. And post-*Salazar*, Plaintiff is a subscriber because he provided his personal information to Defendant to establish a relationship and obtain any and all of Defendant's goods or services (including its newsletter)—because he is a subscriber, the VPPA prohibits Defendant from sharing his personally identifiable information with any third party.[2]

*Salazar* confirms Plaintiff's allegations supporting his status as a consumer. "Consumer" is "defined by the VPPA as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). There is no dispute that, like the definition of "video tape service provider," the definition of "consumer" is "broad" and "expansive." *Salazar*, 2024 WL 4487971, at *12–13. In holding that the plaintiff in *Salazar* qualified as a "consumer," the court held that "he gave the NBA valuable personal information in exchange for access to the online newsletter." *Id.* at *15. Its holding supports the simple concept that the consumer-video tape

[2] Plaintiff and the class members were and are subscribers and therefore entitled to exactly the same protections under the VPPA both pre- and post-*Salazar*. Exhausting the Parties' resources in preparing an amended complaint and its attendant briefing to allege Plaintiff subscribed to Defendant's newsletter makes little sense when the outcome is exactly the same.

service provider relationship is established by the subscriber's provision of valuable information in exchange for access to a good or service. *Id.* These are precisely the circumstances Plaintiff alleges here, and accordingly he is a consumer.

Defendant makes two primary arguments in support of dismissal on this basis. First, Defendant argues that Plaintiff has not provided *enough* personal information to support his status as a subscriber. Reply at 4. But nothing in *Salazar* suggests a minimum threshold of information must be satisfied before a person can be considered a subscriber. In fact, *Salazar* states that self-identification as a subscriber could alone suffice for purposes of the VPPA. 2024 WL 4487971, at *15 (discussing the ease of subscribing on YouTube by simply clicking the "subscribe" button). Under *Salazar*, Plaintiff's provision of his personal information (name and email address) ten years ago in exchange for receipt of goods or services including unlimited access to Defendant's video library makes him a subscriber. Upon providing his name and email, Plaintiff became identifiable to Defendant and enabled Defendant to contact him. This clearly makes "[Scientific American's] relationship with him distinct from its relationship with casual [Scientific American] video-watchers who had not signed up for the [unlimited video library]." *See id.*

Second, Defendant argues Plaintiff does not sufficiently plead he took advantage of the benefits associated with his status as a subscriber (i.e., that he, in fact, watched more than three videos). Reply at 6.[3] While this no longer makes sense in light of *Salazar*, Plaintiff *does* plead that he watched more than three videos. "During the class period, users were required to register and

---

[3] This argument is likewise nonsensical because it suggests a person who mails a subscription request card from a magazine to the distributor along with all necessary information and payment (if required) is not a subscriber until after the first issue is received at the individual's house—nothing would support the contention that this person is not a subscriber just like everyone else whose name is added to the distribution list.

become subscribers in order to watch more than three videos on the Website. To be clear, status as a subscriber was a condition to accessing additional videos, thereby enhancing their viewing experience." Compl. ¶ 28. "Plaintiff Lee requested or obtained prerecorded audio visual materials *through his subscription to the Website*[.]" Compl. ¶ 44 (emphasis added).

Even pre-*Salazar*, whether a user took advantage of the benefits of a subscription does not impact that user's status as a subscriber. Plaintiff took all steps *required by Scientific American* to become a subscriber and obtain unlimited access to its video library or otherwise its goods or services. He became a subscriber upon provision of the necessary information—here, his name and his email. His having done so in exchange for *access* to view more than three videos is what makes him a subscriber: it matters not whether he provided his personal information before or after he watched the first, second, or third video.[4] Defendant's reliance on *Golden v. NBCUniversal Media, LLC*, No. 22 CIV. 9858 (PAE), 2024 WL 4149219, at *6 (S.D.N.Y. Sept. 11, 2024), is a misstatement of law as its reasoning was overturned by *Salazar*, and moreover is plainly distinguishable, where the plaintiff's FAC did not allege there was *any* change to her ability to view additional video content after having subscribed to the newsletter. Rather, here, by providing his personal information, Plaintiff Lee created a "commitment, relationship, or association (financial or otherwise) between [himself] and [Defendant]"—a relationship that involved "*either* payment, registration, commitment, delivery, … *or* access to restricted content." *Salazar*, 2024 WL 4487971, at *14 (emphasis added). Albeit not behind a paywall, Scientific American limited Plaintiff to only three videos absent obtaining a subscription—upon provision of his personal

[4] The Second Circuit further contemplated the idea that watching free videos may alone qualify an individual as a subscriber. *Salazar*, at *13 ("Even presuming that merely watching free video—and giving up personal information in the process—does not make someone a VPPA consumer…")

information, he became a subscriber and was granted unlimited access to Defendant's full video library.

Plaintiff's allegations squarely satisfy the requirements identified in *Salazar*: Plaintiff provided his personal information in exchange for unlimited access to Defendant's video library. Plaintiff became a subscriber when he submitted such information and such limitations were removed.

## IV. **<u>If Necessary, Plaintiff Should Be Granted Leave to Amend</u>**

"The court should freely grant leave when justice so requires." FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[This mandate is to be heeded."). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.*

No such motives exist here (and Defendant has identified none). Plaintiff seeks leave to amend to the extent the Court disagrees that Plaintiff's allegations sufficiently state a claim. Unlike the facts in *Lesnik v. Lincoln Fin. Advisors Corp.*, in which the plaintiff requested leave to amend well into discovery and to fundamentally alter the course of the case up to that point in time, Plaintiff seeks leave to amend to correct deficiencies found by the Court and does so while still in the early stages of this case. *See* 2019 WL 6169971 (S.D.N.Y. Nov. 20, 2019). But ultimately, Plaintiff disagrees with Defendant's view of his allegations: he sufficiently alleges violations of the VPPA.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be DENIED, or in the alternative, Plaintiff should be granted leave to amend his complaint.

Dated: October 30, 2024

Respectfully submitted,

*/s/ Samuel R. Jackson*

Samuel R. Jackson (5332325)
James Allen Carney (admitted *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
Email: sjackson@cbplaw.com
Email: acarney@cbplaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on October 30, 2024, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic mail notice to all counsel of record.

*/s/ Samuel R. Jackson*
Samuel R. Jackson