**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEE, individually<br>and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINGER NATURE AMERICA, INC.,<br><br>Defendant. | Case No. 1:24-CV-04493-LJL<br><br>Hon. Lewis J. Liman |

**DECLARATION OF ALLEN CARNEY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Allen Carney, do declare and state as follows:

1. I am a partner with the law firm Carney, Bates and Pulliam, PLLC ("CBP"). CBP ("Class Counsel") represents Plaintiff Mark Lee ("Plaintiff" or "Settlement Class Representative") and the proposed Settlement Class in this action (the "Action").

2. I make this Declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this Declaration based on active participation in all aspects of the prosecution and resolution of the Action, and if called upon to testify, I could and would truthfully and competently testify as to all matters stated herein.

## BACKGROUND AND EXPERIENCE

3. CBP's firm resume, which details my background as well as CBP's background, is attached hereto as Exhibit A. To provide a brief overview, CBP has extensive experience in class

action and complex litigation, including class litigation involving VPPA claims. CBP has served or is serving as co-lead counsel in the following cases: *Volino v. Progressive Cas. Ins. Co.,* 1:21-cv-06243-LGS (S.D.N.Y.) (class action involving automobile total loss settlement practices, settling for $48,000,000, and receiving final approval on March 3, 2025); *Brown v. Progressive Mountain Ins. Co.,* 3:21-cv-175-TCB (N.D. Ga.) (class action involving automobile total loss settlement practices, settling for $43,000,000 and receiving final approval on May 15, 2025); *Vela, et al. v. AMC Networks, Inc*., No. 1:23-cv-02524-ALC (class action involving VPPA claims, settling for $8,300,000, and receiving final approval on May 16, 2025); *Czarnionka v. The Epoch Times Assoc., Inc*., No. 1:22-cv-06348-AKH (S.D.N.Y) (class action settlement involving VPPA claims and receiving final approval on July 10, 2024); *Fiorentino v. Flosports, Inc*., No. 1:22-cv-11501-AK (D. Mass.) (class action involving VPPA claims, settling for $2,625,000, and receiving final approval on March 5, 2024); *Caldwell, et al. v. Freedom Mortgage Co*., No. 3:19-cv-02193-N (N.D. Tex.) (Pay-to-Pay class action, settling for $2,250,000 and receiving final approval in December 2021); *Phillips, et al. c. Caliber Home Loans, Inc*., 19-cv-02711-WMW-LIB (D. Minn.) (Pay-to-Pay class action settling for $5,000,000, which represented 29.39% of the aggregate Pay-to-Pay fees collected from the settlement class); *Wilson v. Santander Consumer USA*, No. 4:20-cv-00152-KGB (E.D. Ark.) (Pay-to-Pay class action settling for $800,000, which represented 22% of the total Pay-to-Pay Fees that were alleged to have been improperly collected by the defendant); *Williams v. State Farm Mutual Automobile Insurance Company*, 4:11-cv-00749-KGB (E.D. Ark.) (class litigation resulting in a settlement of $21.7 million with 7,635 individuals receiving 100% recovery plus six percent prejudgment interest while releasing no claims or rights (other than named plaintiffs)); *Ebarle, et al. v. LifeLock, Inc*., 3:15-cv-00258 (N.D. Cal.) (class action on behalf of customers of the identity theft protection service, resulting in a nationwide settlement of

$81 million that was granted final approval in September 2016); *Wayne Miner et al. v. Philip Morris USA Inc.*, Case No. 60CV-03-4661 (Pulaski Co. Cir. Ct.) (class action brought on behalf of Arkansas smokers over claims that the defendant misrepresented the safety of its "light" cigarette products, which settled in 2016 for $45 million).

4. Additionally, CBP served as lead counsel in *Econo-Med Pharmacy, Inc. v. Roche Diagnostics Corporation,* 1:16-cv-00789-TWP-MPB (S.D. Ind.), representing a class of pharmacies in a Telephone Consumer Protection Act ("TCPA") litigation resulting in a $17 million settlement, which was granted final approval on September 21, 2017. CBP also served as lead counsel in *ARcare, Inc. v. Qiagen North America Holdings, Inc., et al.*, Case No. 43CV-17-46 (Judge Sandy Huckabee, Lonoke Co. Cir. Ct.), representing a class of pharmacies in a TCPA litigation resulting in a $15.5 million settlement, which was granted final approval on December 3, 2018. CBP has also been involved in such notable data breach cases as *In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, 1:14-md-02583-TWT (N.D. Ga.) (serving on Plaintiffs' Steering Committee), and *In re: Target Corporation Customer Data Security Breach Litigation*, 0:14-cmd-02522-PAM-JJK (D. Minn.) (serving as counsel for lead plaintiff Umpqua Bank).

5. A full listing of the cases Class Counsel have been involved in can be found on CBP's firm resume. *See* Ex. A. As evidenced therein, Class Counsel has extensive knowledge in class action litigation and is adequately capitalized and staffed, allowing Class Counsel to dedicate the resources needed to vigorously pursue the claims of putative class members and to achieve the best possible result.

## **THE PROPOSED SETTLEMENT**

6. On May 9, 2025, Plaintiff and Springer Nature America, Inc. ("SNAI" or

"Defendant," and collectively with Plaintiff, the "Parties") participated in a day-long mediation before the Honorable Diane M. Welsh (Ret.). During that mediation and through pre-mediation discovery, the Parties informally shared information regarding the alleged disclosure of Class Members' personally identifiable information ("PII") and Rule 23 considerations. In preparation for the mediation, the Parties also prepared detailed mediation statements outlining their respective legal positions regarding the merits of Plaintiff's claims under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), class certification, and the scope of damages.

7. The mediation and exchange of information allowed Class Counsel to assess the strength of Plaintiff's claims, as well as SNAI's defenses, and balance the benefits of any settlement against the risks of further litigation, a process that was further informed by Class Counsel's prior litigation and experience.

8. Based on the foregoing and with the assistance of the Honorable Diane M. Welsh (Ret.), the Parties were able to negotiate a settlement in principle on May 9, 2025. Over the next several weeks, the Parties continued settlement negotiations regarding comprehensive settlement terms, which are codified in the Settlement Agreement being contemporaneously filed herewith.

9. Under the proposed Settlement now before the Court, Defendant shall establish a cash settlement fund of $900,000 (the "Settlement Fund") for the benefit of Settlement Class Members.

10. Settlement Class Members who submit valid claims will receive a *pro rata* payment after the deduction of settlement-related costs, including Settlement Administration Expenses, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award.

11. To the extent that any checks issued to a Settlement Class Member are not cashed within one-hundred twenty (120) days after the date of issuance, such uncashed check funds shall

be redistributed on a *pro rata* basis (after first deducting any necessary Settlement Administration Expenses from such uncashed check funds) to all Settlement Class Members who cashed checks or received electronic payments during the initial distribution, but only if each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible. If each Settlement Class Member would receive less than $5.00 in any such secondary distribution, a secondary distribution would be otherwise infeasible, or any funds remain unclaimed 120 days following a secondary distribution, such funds shall, subject to Court approval, be distributed to a non-sectarian and/or not-for-profit organization recommended by Class Counsel and approved by the Defendant. No funds from the Settlement will revert to Defendant.

12. The Settlement also provides for meaningful business practice changes. Under the Settlement, SNAI has agreed to continue ceasing its use of the Meta Pixel on any pages on the Scientific American Website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Second Circuit Court of Appeals.

13. In exchange for the consideration from the Defendant, the Action will be dismissed with prejudice upon final approval of the Settlement, and the Settlement Class Members will thereby release all claims that have or could have been asserted against the Released Parties, relating to the facts, transactions, or events alleged in this Action.

14. Based on the Parties' exchange of information, the Settlement Class is estimated to include 32,468 members.

15. Class Counsel is aware of no conflicts between the proposed Class Representative

and the Settlement Class.

16. The proposed Settlement provides for direct notice to Settlement Class Members by email to all Settlement Class Members for whom a valid email address is available in the Class List. A reminder notice shall be emailed to Settlement Class Members twenty-one (21) days after the initial Email Notice, and if deemed necessary by Class Counsel in consultation with the Settlement Administrator or otherwise directed by this Court, the Parties agree to discuss whether an additional notice and/or means of notice is appropriate, including, but not limited to, sending a third reminder Email Notice to all Settlement Class Members for whom a valid email address is available in the Class List and who have not yet filed a claim with the Administrator.

17. Additionally, Notice shall be provided on a case-specific settlement website ("Settlement Website") that will enable Settlement Class Members to file Claim Forms online, and a toll-free telephone line with an interactive voice response ("IVR") system will be established to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Action.

18. Class Counsel believe the form and manner of notice in this Action is reasonably calculated to apprise members of the Settlement Class of the pendency of this action, the terms of the Settlement, and the rights to file a claim, to object to any part of the Settlement or to exclude themselves from the Settlement Class, and constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and the requirements of any other applicable law.

19. Class Counsel further believe that when measured against all the relevant standards for approval of class action settlements, the proposed Settlement is fair, reasonable, and adequate and preliminary approval is warranted.

20. Indeed, as set forth above, the Settlement provides for immediate, meaningful, and robust monetary and non-monetary relief. More specifically, the Settlement provides a common fund of $900,000 for the benefit of the approximately 32,468 Settlement Class Members, which equates to roughly $27.71 per Settlement Class Member before deduction of costs and fees. This is an excellent recovery for the Settlement Class. *See In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (VPPA settlement providing $16.50 per claim); *Feldman v. Star Tribune Media Company LLC*, 0:22-CV-01731, slip opinion (June 17, 2024) ($2,900,000 VPPA settlement yielding per settlement class member recoveries of $9.67); *Sellers, et al. v. Bleacher Report, Inc.*, 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member recoveries of $1.78); *see also In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1117 (9th Cir. 2021) (affirming district court's finding that "injunctive relief, together with the indirect benefits conferred by the *cy pres* provisions, was fair, reasonable, and adequate compensation to the class members.").

21. Additionally, the Settlement was reached through arm's-length negotiations before a neutral mediator; and only after Class Counsel conducted an extensive factual investigation, drafted the complaint, completed briefing on Defendant's motion to dismiss, conducted informal discovery, and participated in a full-day mediation. As such, Class Counsel possessed all the information necessary to evaluate the case and reach a fair and reasonable compromise.

22. Moreover, throughout the settlement discussions, counsel for the Defendant defended their client's position and demonstrated their commitment to litigate this Action to its conclusion. Hence, the proposed Settlement represents concessions by both Parties after hard-fought litigation and arm's length negotiations conducted by experienced counsel on both sides

who were thoroughly familiar with the factual and legal issues and with the assistance of an experienced mediator.

23. Additionally, even after the major terms of the Settlement were reached, additional time and discussions were required to finalize the Settlement Agreement. Numerous drafts of the Settlement Agreement and accompanying exhibits were circulated amongst the Parties for comment over the course of several weeks until an agreed-to form of the Settlement Agreement and exhibits were ultimately reached.

24. The Settlement Agreement provides that Class Counsel may file a motion with the Court requesting an award of attorneys' fees not to exceed one-third of the Settlement Fund to compensate them for all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel may also seek reimbursement of reasonable out-of-pocket litigation expenses.

25. The anticipated requests for attorneys' fees and litigation expenses are reasonable and consistent with prevailing standards in this Circuit. *See Gonzalez v. Hanover Ventures Marketplace LLC*, No. 1:21-CV-01347, 2025 WL 1603941, at *3 (S.D.N.Y. June 6, 2025) (awarding attorneys' fees of one-third of the Settlement Fund, plus costs and expenses); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *15 (E.D.N.Y. Jan. 26, 2024) (awarding attorneys' fees of one-third of the settlement fund, or $2,125,000, and stating such amount constitutes "a proportion routinely approved as reasonable").

26. In addition, the Settlement Agreement provides that Class Counsel may file a motion with the Court requesting a Service Award of up to $25,000 for the Settlement Class Representative to compensate him for his efforts and risks in bringing and prosecuting the Action on behalf of the Settlement Class Members and achieving the benefits of the Settlement.

27. The enforceability of the Settlement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees, litigation expenses, or a Service Award.

28. Moreover, it was only after agreeing on the principal terms of the proposed Settlement that the Parties discussed a potential Service Award to the Settlement Class Representative and attorneys' fees and expenses for Class Counsel. The only agreement made regarding those items was that Class Counsel would seek (i) an award of attorneys' fees from the Court of no more than one-third of the Settlement Fund plus expenses, to be paid solely out of the Settlement Fund, and (ii) a Service Award of $25,000 to Plaintiff to compensate him for his efforts and risks in bringing and prosecuting the Action on behalf of the Settlement Class Members and achieving the benefits of the Settlement.

29. Thus, the Settlement was achieved through arm's-length negotiations conducted by informed counsel with the assistance of a neutral third-party mediator, contains no obvious deficiencies, lacks any evidence of fraud or collusion, and treats Settlement Class Members equally.

30. Class Counsel believe that the Settlement is an excellent result for the Settlement Class, is in the best interest of the Settlement Class, and is appropriate for preliminary approval.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 27th day of June, 2025.

*/s/ Allen Carney*
Allen Carney