**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK LEE, individually and on behalf of all others similarly situated, <br><br>           Plaintiff, <br><br>    v. <br><br> SPRINGER NATURE AMERICA, INC., <br><br>           Defendant. | Case No. 1:24-CV-04493-LJL <br><br> Hon. Lewis J. Liman |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   OVERVIEW OF THE LITGATION AND SETTLEMENT ............................................. 2

    A.    Procedural Background.......................................................................................... 2

    B.    Summary of the Settlement Terms ........................................................................ 5

        1.    The Settlement Class.................................................................................. 5

        2.    Monetary Relief ........................................................................................ 6

        3.    Business Practice Changes ........................................................................ 6

        4.    Release ...................................................................................................... 6

        5.    Notice ....................................................................................................... 7

        6.    Attorneys' Fees, Litigation Expenses, and a Service Award.................... 7

III.  APPLICABLE LEGAL STANDARDS ........................................................................... 8

IV.   THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL................. 9

    A.    The Settlement Is Procedurally Fair. .................................................................... 9

    B.    The Settlement Is an Excellent Result for the Settlement Class, and
         Consideration of the Risks of Continued Litigation, the Effectiveness of
         Proposed Distributions Methods, the Application for Attorneys' Fees, and the
         Lack of any Side Agreement Favor Approval. .................................................... 12

        1.    The Complexity, Expense, and Duration of Litigation Through Trial and
            Appeal. .................................................................................................... 12

        2.    The Effectiveness of Proposed Distributions Methods and the Lack of an
            Agreement Required to Be Identified Under 23(e)(3). .......................... 15

        3.    Class Counsel's Reasonable Fee Request Will Neither Impair nor Delay
            Relief to the Settlement Class. ................................................................ 16

    C.    The Settlement Treats Settlement Class Members Equitably.................................... 17

    D.    The Reaction of the Settlement Class supports final approval. ................................. 18

    E.    The Remaining *Grinnell* Factors Weigh in Favor of Final Approval........................ 18

V.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE
    AND WARRANTED. ......................................................................................................... 19

VI.   THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e). ............... 20

VII.  CONCLUSION.................................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Broockmann v. Bank of Greene Cnty.*,
   2023 WL 7019273 (N.D.N.Y. Oct. 25, 2023) ............................................................... 17

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................... 18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................... 9, 10, 12, 18

*Clark v. City of New York*,
   2024 WL 1855668 (S.D.N.Y. Apr. 29, 2024)............................................................... 11

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)................................................................................ 10

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................ 12, 13

*Feldman v. Star Tribune Media Company LLC*,
   0:22-CV-01731, slip opinion (June 17, 2024)............................................................ 16

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)............................................................. 13

*Hicks v. Morgan Stanley & Co.*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................................................. 15

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................... 19

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................... 13

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ....................................................................... 12

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................................ 8

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
   21 F.4th 1102 (9th Cir. 2021) ......................................................................... 16

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................... 18

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
  2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ....................................................... 17

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020)................................................................ 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  2024 WL 3236614 (E.D.N.Y. June 28, 2024) ................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ 13, 19

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020)...................................................... 17

*In re Synchrony Fin. Sec. Litig.*,
  2023 WL 4992933 (D. Conn. Aug. 4, 2023) ............................................. 9, 18, 21

*In re Tenaris S.A. Sec. Litig.*,
  2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ................................................... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
  2019 WL 12966638 (C.D. Cal. July 31, 2019) .................................................. 16

*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ...................................................... 14

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
  2023 WL 3251421 (N.D.N.Y. May 3, 2023)...................................................... 13

*Martinez v. D2C LLC*,
  2023 WL 6587308 (S.D. Fl. Oct. 10, 2023) ...................................................... 14

*Matheson v. T-Bone Rest., LLC*,
  2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ................................................... 11

*Melito v. Am. Eagle Outfitters, Inc.*,
  2017 WL 3995619 (S.D.N.Y. Sep. 11, 2017)...................................................... 8

*Morgan v. Public Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................. 18

iii

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................. 13

*Nichols v. Noom, Inc.*,
   2022 WL 2705354 (S.D.N.Y. July 12, 2022) ....................................................... 13

*Salazar v. National Basketball Association*,
   118 F.4th 533 (2d Cir. 2024) ............................................................................ 14

*Salazar v. Paramount Global*,
   133 F.4th 642 (6th Cir. 2025) .......................................................................... 14

*Selby v. Principal Mut. Life Ins. Co.*,
   2003 WL 22772330, (S.D.N.Y. Nov. 21, 2003) .................................................. 19

*Sellers, et al. v. Bleacher Report, Inc.*,
   2024-003537-CA-01, slip opinion (August 8, 2024) ............................................ 16

*Soler v. Fresh Direct LLC*,
   2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) ....................................................... 9

*Solomon v. Flipps Media, Inc.*,
   136 F.4th 41 (2d Cir. 2025) .............................................................................. 14

*Stinson v. City of N.Y.*,
   256 F. Supp. 3d 283 (S.D.N.Y. 2017) ................................................................. 13

*Truesdale v. Nationwide Affinity Ins. Co. of Am.*,
   2012 WL 12892879 (M.D.N.C. Oct. 19, 2012) ................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................... 8, 20

**Statutes**

18 U.S.C. § 2710 ................................................................................................... 3, 20

**Other Authorities**

FEDERAL JUDICIAL CENTER, *Judges' Class Action Notice and Claims Process Checklist and
   Plain Language Guide* ...................................................................................... 21
*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) .................................... 8

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim
Fed. R. Civ. P. 23(a) ....................................................................................... 5, 12, 16

Fed. R. Civ. P. 23(b)(3)..............................................................................................................5

Fed. R. Civ. P. 23(c) ...............................................................................................................2

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................................20

Fed. R. Civ. P. 23(e) ..........................................................................................................8, 20

Fed. R. Civ. P. 23(e)(2)...........................................................................................4, 8, 9, 19

Fed. R. Civ. P. 23(e)(2)(A) ..............................................................................................10, 12

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................................................10, 12

Fed. R. Civ. P. 23(e)(2)(C)(ii)..........................................................................................15, 16

Fed. R. Civ. P. 23(e)(2)(C)(iv)..........................................................................................15, 16

Fed. R. Civ. P. 23(e)(2)(D) ..............................................................................................17, 18

Fed. R. Civ. P. 23(e)(3)...........................................................................................9, 12, 15, 16

Fed. R. Evid. 408 ...................................................................................................................4

## I.     __INTRODUCTION__

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Court's Order Granting Preliminary Approval of Class Action Settlement, dated July 10, 2025 (ECF No. 46, the "Preliminary Approval Order"), Plaintiff Mark Lee ("Plaintiff" or "Settlement Class Representative") respectfully submits this memorandum of law in support of final approval of the proposed Class Action Settlement (the "Settlement") reached with Defendant Springer Nature America, Inc. ("SNAI" or "Defendant") in this action (the "Action").

The Settlement—negotiated at arm's-length with the assistance of neutral mediator, the Hon. Diane M. Welsh (Ret.)—creates a $900,000.00 non-reversionary cash fund for the benefit of the Settlement Class and secures meaningful prospective relief requiring SNAI to suspend operation of the Meta Pixel on portions of its website relevant to VPPA compliance—i.e., webpages that both include video content and have a URL that identifies the video content viewed. As such, the Settlement affords immediate, tangible compensation and robust prospective protections to Settlement Class Members in exchange for an appropriately tailored release.

Plaintiff firmly believes that this is an excellent Settlement, in the best interests of the Settlement Class, and satisfies the criteria for final approval. More specifically, the Settlement is the product of extensive investigation, hard-fought litigation, and arm's-length negotiations conducted by experienced counsel with the assistance of a nationally respected mediator. It embodies a fair, reasonable, and adequate compromise that offers both monetary and non-monetary relief while, at the same time, eliminating the risks, costs, and delay of further litigation—risks magnified by the unpredictability of a jury trial and likely appeals by Defendant even if Plaintiff were to prevail at key benchmarks in the case, including class certification,

1

summary judgment, and trial. Accordingly, the terms and conditions of the Settlement were fairly negotiated and reflect a fully informed and fair compromise.

The Notice Plan has now been implemented as the Court directed in its Preliminary Approval Order, with individual notice efforts reaching approximately 98% of the identified Settlement Class Members. *See* Declaration of Settlement Administrator Simpluris, Inc. Regarding Notice and Administration ("Simpluris Decl.") at ¶¶ 6–11, and 14. That notice was further enhanced by a dedicated settlement website and a toll-free call center. Simpluris Decl. at ¶¶ 12–13. To date, not a single Settlement Class Member has objected to or requested exclusion from the Settlement. *See id*. at ¶¶ 17 and 19.[1] Thus, the Settlement enjoys the support of the Settlement Class.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically requests this Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) grant final certification to the Settlement Class; (3) find that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (4) enter the proposed Final Approval Order and Judgment.[2]

## II.    **OVERVIEW OF THE LITGATION AND SETTLEMENT**

### A.    **Procedural Background**

On June 12, 2024, Plaintiff filed a putative class action complaint against SNAI in the

---

[1] The deadline for objections and exclusion requests from the Settlement is September 14, 2025. Plaintiff will update the Court after this deadline has passed.

[2] Plaintiff shall submit a proposed Final Approval Order and Judgment in conjunction with his supplemental briefing, which is due to the Court by October 23, 2025.

2

United States District Court for the Southern District of New York (the "Action") alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA"). ECF No. 1. The material allegations of the Complaint center on Defendant's alleged disclosure of its subscribers' personally identifiable information ("PII"), as defined under the VPPA, to Meta (formerly Facebook) without informed, written consent by installing the Meta Pixel on its websites.

On August 23, 2024, Defendant filed a Motion to Dismiss Plaintiff's Complaint, along with a supporting memorandum of law and two declarations. ECF Nos. 13–16. On September 20, 2024, Plaintiff filed an opposition to Defendant's Motion to Dismiss (ECF No. 19) and a Motion to Strike (ECF No. 20). On October 23, 2024, Defendant filed its reply in further support of its Motion to Dismiss and its response to Plaintiff's Motion to Strike. ECF Nos. 25–26. On October 30, 3024, Plaintiff filed a sur-reply in opposition to Defendant's Motion to Dismiss and his reply in further support of his Motion to Strike. ECF Nos. 27–28.

On March 4, 2025, the Court entered an order denying Defendant's Motion to Dismiss and denying Plaintiff's Motion to Strike. ECF No. 29.

On March 7, 2025, Plaintiff's Counsel filed a letter motion with the Court requesting a forty-five (45) day extension with regard to the parties' deadline to request an Initial Pretrial Conference, to enable the parties to explore the possibility of mediation (ECF No. 30), which the Court granted. ECF No. 31.

On March 18, 2025, Defendant filed its Answer. ECF No. 32.

On April 9, 2025, Plaintiff's Counsel filed a letter motion advising the Court that the parties had scheduled a mediation session for May 9, 2025, and requesting the Court to extend the parties' deadline to request an Initial Pretrial Conference to May 23, 2025 (ECF No. 33), which the Court granted. ECF No. 34.

On May 9, 2025, the parties attended an all-day mediation with the Honorable Diane M. Welsh (Ret.). This mediation resulted in a settlement in principle. As part of the mediation process, the Parties submitted mediation statements and exchanged informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed. R. Evid. 408.

On May 21, 2025, Plaintiff's Counsel filed a letter motion informing the Court that the parties engaged in a full-day mediation session before Hon. Diane Welsh (Ret.) on May 6, 2025, which resulted in an agreement in principle to resolve this matter. ECF No. 35. Plaintiff's Counsel further asked the Court to strike the May 23, 2025 deadline to request an Initial Pretrial Conference, and instead requested a deadline of June 13, 2025 for Plaintiff to file his motion for preliminary approval (*see id.*), which the Court granted. ECF No. 36.

Following the mediation, counsel for the parties continued to negotiate in order to reach the final terms of the settlement, which are memorialized in the Settlement Agreement and exhibits and summarized below.

On June 27, 2025, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement, with a supporting memorandum of law and declaration. *See* ECF Nos. 39-41. On June 30, 2025, the Court entered an order requesting additional briefing on certain aspects of the proposed Settlement. *See* ECF No. 42. In accord therewith, Plaintiff filed a supplemental memorandum of law on July 7, 2025 addressing the issues so requested by the Court, and in response to the Court's July 9, 2025 Order Granting Motion for Settlement (ECF No. 44), the Parties submitted an Amended Settlement Agreement. ECF No. 45-1.

On July 10, 2025, this Court entered the Preliminary Approval Order, ECF No. 46, finding (1) that it likely will be able to approve the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); (2) that it likely will be able to certify a class for purposes of judgment on the Settlement

under Rules 23(a) and (b)(3); (3) that the proposed plan of notice to the Settlement Class comports with due process and is reasonably calculated to apprise Settlement Class Members of the nature of the action, the scope of the Settlement Class, the terms of the Settlement Agreement, the rights of the Settlement Class Members to file a claim, to object and to opt out, and the Final Approval Hearing; and (4) scheduling a Final Approval Hearing to determine whether this Court should enter a Judgment finally approving the Settlement and an order of dismissal of this action based upon the Settlement.

On July 29, 2025, the Parties submitted a Joint Letter Motion seeking an extension of the Final Approval Hearing (ECF No. 47), which the Court granted on that same day (ECF No. 48) and which rescheduled the Final Fairness Hearing for November 6, 2025.

### B.    Summary of the Settlement Terms

#### 1.    The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

> All persons in the United States who: (1) possessed login credentials for the website, https://www.scientificamerican.com (the "Scientific American Website"), whether accessed via a web browser or mobile device and were paying subscribers; (2) possessed a Facebook account, and (3) requested or obtained video content from and/or through any of SNAI's Services during the Class Period while logged into Facebook.

Settlement Agreement ¶ 1.33. The "Class Period" is defined as the period from June 12, 2022, to and through July 10, 2025 (i.e., the date of Preliminary Approval). *Id*. at ¶ 1.5. The Settlement Class specifically excludes: (1) any persons who have asserted claims against Defendant under the VPPA prior to the date of this settlement through counsel other than Class Counsel; (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors,

5

agents, and attorneys; (4) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (5) the legal representatives, successors or assigns of any such excluded persons. *Id*. at ¶ 1.33.

### 2.     Monetary Relief

SNAI has agreed to pay $900,000.00 to create a non-reversionary Settlement Fund for the benefit of Settlement Class Members. Settlement Agreement ¶¶ 1.32, 1.35, and 2.1. Settlement Class Members who submit valid claims will receive a *pro rata* payment after the deduction of settlement-related costs, including Settlement Administration Expenses, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. *Id*. ¶¶ 1.12, 1.28, 1.30, and 2.1–2.2.

### 3.     Business Practice Changes

SNAI also has agreed to implement meaningful business practice changes designed to remediate the alleged VPPA violations going forward. More specifically, SNAI has committed to continue ceasing its use of the Meta Pixel on any pages on the Scientific American Website that both include video content and have a URL that identifies the video content viewed, unless and until the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Second Circuit Court of Appeals. Settlement Agreement ¶ 2.6. Nothing about this provision prevents Defendant from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Meta Pixel. *Id*. Likewise, nothing herein shall prohibit the use of the Meta Pixel where the disclosure of information does not identify specific video materials that a user has requested or obtained. *Id*.

### 4.     Release

In exchange for the relief described above, Plaintiff and the Settlement Class shall release all claims that have or could have been asserted against SNAI, relating to the facts, transactions, or events alleged in this Action. *See id*. ¶ 1.25 (Released Claims), ¶ 1.26 (Released Parties), and ¶¶ 4.1–4.2 (Release).

      5.      <u>Notice</u>

Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan. *See generally* Simpluris Decl. To date, two rounds of direct notice have been delivered via email to all Settlement Class Members for whom a valid email address is available in the Class List. *Id*. at ¶¶ 8–11.

The Notices included the following information: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members to request exclusion from the Settlement Class or to object to the Settlement and instructions about how to exercise those rights, (3) specifics on the date, time, and place of the Final Approval Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Class Representatives' service awards. *See id*. at ¶ 7 and Exs. B and C thereto.

Additionally, Notice is being provided on a case-specific settlement website that includes the ability to file Claim Forms online, and a toll-free telephone line with an interactive voice response ("IVR") system has been established to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Action. *Id*. at ¶¶ 12–13.

      6.      <u>Attorneys' Fees, Litigation Expenses, and a Service Award</u>

In accordance with the Settlement Agreement, Class Counsel is concurrently filing a motion requesting an award of attorneys' fees and litigation expenses to compensate them for the

work already performed in this case, the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel is requesting an award of one third of the Settlement Fund—*i.e.* $300,000.00—and reimbursement of out-of-pocket litigation costs of $18,189.53. The enforceability of the Settlement Agreement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees or litigation expenses. Class Counsel is also requesting a Service Award of $25,000 for Plaintiff for his role in litigating and settling this case.

## III.     APPLICABLE LEGAL STANDARDS

Rule 23(e) requires judicial approval for the settlement of class actions that bind class members. *See* Fed. R. Civ. P. 23(e). The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord, e.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440 (VEC), 2017 WL 3995619, at *11 (S.D.N.Y. Sep. 11, 2017) ("[A]pproval of a class settlement is within the [] court's discretion, 'which should be exercised in light of the [] judicial policy favoring settlement.'"); *Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

Rule 23(e)(2) requires courts to consider the following questions in determining whether a proposed settlement is "fair, reasonable, and adequate:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
      (i) the costs, risks, and delay of trial and appeal;
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
      (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"In deciding whether the compromise is fair, reasonable, and adequate, the court must consider both the substantive terms of the settlement and whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (cleaned up). In performing this analysis, courts in this Circuit supplement the Rule 23(e)(2) factors with the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See Soler v. Fresh Direct LLC*, 20 Civ. 3431, 2023 WL 2492977, at *2 n.3 (S.D.N.Y. Mar. 14, 2023) ("The advisory committee notes ... indicate that the ... Rule 23 factors were not intended to displace the *Grinnell* factors, but to focus courts on the core concerns of procedure and substance." (internal quotation marks omitted)). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund given the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

IV.    **THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL**

      A.    **The Settlement Is Procedurally Fair.**

9

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2) (A)–(B); *see also Grinnell*, 495 F.2d at 463 (overlapping with the third *Grinnell* factor, *i.e.*, the stage of the proceedings and the amount of discovery completed). In assessing adequacy of representation, courts focus on whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). This process addresses whether the Class Representative had a sufficient (or adequate) information base upon which to determine whether the terms of a settlement offer were desirable compared to the strengths and weaknesses of the claims should settlement be rejected. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (E.D.N.Y.), 2024 WL 3236614, at *19 (E.D.N.Y. June 28, 2024) (noting that Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment states the "nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

Here, Plaintiff's interests are aligned with the interests of Settlement Class Members as, during the Class Period, each possessed and used login credentials for SNAI's websites(s), each requested or obtained video content through SNAI's services during the Class Period, and each suffered the same alleged injury (the improper disclosure of personally identifiable information without consent) and have the same interest in securing remedial and injunctive relief resulting in the cessation of the collection and possession of their personally identifiable information. Moreover, the monetary and remedial relief achieved in Settlement applies equally and uniformly to benefit all members of the Settlement Class. Thus, there is no conflict between Plaintiff and the

members of the Settlement Class.

Similarly, Class Counsel have vigorously and adequately represented the Settlement Class. Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. *See* ECF No. 41 at ¶¶ 3–5 and Ex. A thereto. As demonstrated by the record, Plaintiff and Class Counsel performed significant work in identifying and litigating the claims of Plaintiff and the Settlement Class Members prior to the Settlement, including: engaging in extensive factual investigation and forensic analysis of Defendant's website and its use of cookie and pixel technologies; drafting the complaint and motion to strike; successfully opposing Defendant's motion to dismiss; engaging in informal discovery regarding the merits of Plaintiff's claim and class certification; reviewing information propounded in response thereto, drafting a mediation statement and reviewing and evaluating Defendant's submissions, participating in a full-day mediation, achieving a favorable Settlement on behalf of the Settlement Class, drafting the Settlement Agreement and all related exhibits, presenting the proposed Settlement to the Court and obtaining an order directing notice to the Settlement Class, and working with the Settlement Administrator to implement the Court-approved notice plan and to address any other issues that may arise. *See* Declaration of Allen Carney in Support of Plaintiff's (i) Motion for Final Approval of Class Action Settlement, and (ii) Motion For Attorneys' Fees, Litigation Costs, and Service Award ("Supp. Carney Decl.") at ¶¶ 3–13, 30, 45. The adversarial posture and thoroughness of the proceedings, and the adequacy of representation all favor approving the Settlement. *See, e.g., Clark v. City of New York*, No. 18 CIV. 2334 (AT), 2024 WL 1855668, at *1 (S.D.N.Y. Apr. 29, 2024); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where "Plaintiffs obtained sufficient discovery to weigh the

11

strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses").

In sum, Plaintiff's interests are aligned with those of Settlement Class Members. Class Counsel thoroughly represented the interests of the Settlement Class throughout the adversarial litigation and the mediation process. As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is thus procedurally fair. *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (settlement was procedurally fair where negotiations were overseen by a neutral mediator and parties engaged in "extensive" discovery); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator's involvement in "negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

> **B.    The Settlement Is an Excellent Result for the Settlement Class, and Consideration of the Risks of Continued Litigation, the Effectiveness of Proposed Distributions Methods, the Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Approval.**

Next, courts assess the Settlement's substantive fairness. Rule 23(e)(2)(C) enumerates four factors when assessing whether the relief provided is sufficient: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class…" (iii) "the terms of any proposed award of attorney's fees," and (iv) "any agreement required to be identified under Rule 23(e)(3) (overlapping with *Grinnell* factors one, four through six, eight, and nine).

> 1.    The Complexity, Expense, and Duration of Litigation Through Trial and Appeal.

The first Rule 23(e)(2)(C) factor is "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one ("complexity, expense, and likely duration of the litigation") and four, five, and six (risks of establishing liability and damages and maintaining the

class). *See Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB, 2023 WL 3251421, at *4 (N.D.N.Y. May 3, 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). The Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id*.

Continued litigation in this Action would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also, e.g.*, *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (same); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012). Litigation inherently involves risks and uncertainty, which is especially true where, as here, proof of liability and damages would hinge on a "battle of the experts." *See In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (recognizing expert discovery can "substantially increase costs to the settlement class and result in a costly 'battle of the experts' at trial"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

In addition to a battle of the experts, Plaintiff faced the risks of certifying the class and maintaining class certification through trial and appeal. *Nichols v. Noom, Inc*., No. 20-CV-3677 (KHP), 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) (stating the risk attendant to defending any decertification motion supported approval of the settlement). And class certification in VPPA

13

cases is certainly no guarantee. *Compare Martinez v. D2C LLC*, No. 23-21394-Civ-Scola, 2023 WL 6587308 (S.D. Fl. Oct. 10, 2023) (denying VPPA class certification on the basis of numerosity); *with Jancik v. WebMD LLC*, No. 1:22-CV-644-TWT, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (granting class certification in VPPA action). These risks, coupled by a likely appeal of any certification ruling favorable to Plaintiff and/or a motion for decertification, promised further expense and delay.

Lastly, the risks of continued litigation are extremely high in light of the still-developing caselaw interpreting the VPPA. Differences in the language concerning the VPPA's definitions created circuit splits. *Compare Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024) (holding Plaintiff's subscription to a newsletter qualified him as a consumer under the VPPA) *with Salazar v. Paramount Global*, 133 F.4th 642 (6th Cir. 2025) (holding Plaintiff's subscription to a newsletter under the same or similar facts as *NBA* did not qualify him as a consumer under the VPPA). In light of the Second Circuit's recent decision in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), Plaintiff's risks at trial continue to grow.

Had litigation continued in this Action, Plaintiff would also have to conduct formal discovery, which would involve the uncertain process of obtaining relevant information from SNAI and pursuing subpoenas against third parties like Meta. The parties would have also faced significant motions practice related to summary judgment, motions in limine, and other pre-trial matters.

The Settlement eliminates these risks while providing significant monetary and non-monetary relief to the Settlement Class. Any Settlement Class Member that submits a valid claim is entitled to a *pro rata* share of the $900,000.00 Settlement Fund after the deduction of notice and administration costs, any court-awarded attorneys' fees and expenses, and any court-awarded

Service Award. In addition to the monetary relief, the Settlement also includes valuable remedial relief—namely, that SNAI will suspend operation of the Pixel on any pages on its website that both include video content and have a URL that identifies the video content requested or obtained, unless and until the same is authorized or permitted by law, and/or the VPPA is amended, repealed, or invalidated as described above. This is the same injunctive relief Plaintiff would have sought through trial. Class Counsel believe this is an exceptional result for the Settlement Class, particularly as compared to settlements in similar cases. *See* Supp. Carney Decl. at ¶¶ 33–34, 60. Consideration of these factors sharply weigh in favor of approval. *See Hicks v. Morgan Stanley & Co.*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

2.    <u>The Effectiveness of Proposed Distributions Methods and the Lack of an Agreement Required to Be Identified Under 23(e)(3).</u>

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3).

Under the Settlement, any Settlement Class Member who submits a valid claim is entitled to a *pro rata* share of the Net Settlement Fund (i.e., the Settlement Fund less any court-approved attorneys' fees and expenses, service awards, and costs of settlement notice and administration). Even without taking into account expected claim rates, based on the Settlement Class size of 32,468, the Settlement Fund of $900,000 equates to roughly $27.71 per Settlement Class Member before deduction of costs and fees. This is an excellent result, especially considering that the actual recovery for those that make claims will likely be much higher. *See In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS, 2019 WL 12966638, at *4 (C.D. Cal. July

15

31, 2019) (VPPA settlement providing $16.50 per claim); *Feldman v. Star Tribune Media Company LLC*, 0:22-CV-01731, slip opinion (June 17, 2024) ($2,900,000 VPPA settlement yielding per settlement class member recoveries of $9.67); *Sellers, et al. v. Bleacher Report, Inc.*, 2024-003537-CA-01, slip opinion (August 8, 2024) (granting final approval to $4,800,000 VPPA settlement yielding per settlement class member recoveries of $1.78); *see also In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1117 (9th Cir. 2021) (affirming district court's finding that "injunctive relief, together with the indirect benefits conferred by the cy pres provisions, was fair, reasonable, and adequate compensation to the class members."). No funds from the Settlement will revert to Defendant. Settlement Agreement at ¶ 2.4.

Moreover, the claims process involves a simple and straightforward Claim Form, written in plain language to encourage Settlement Class Members to file claims. The Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Settlement Class and to direct financial payments to Settlement Class Members without requiring the submission of additional documents. *See* Simpluris Decl. at Ex. D. Settlement Class Members are able to submit their Claim Forms online via the Settlement Website or through the mail. *See id*. at ¶ 15. Thus, the methods of processing Settlement Class Members Claim Forms and distributing relief to Settlement Class Members are effective and non-burdensome. Further, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, consideration of Rule 23(e)(2)(C)(ii) and (iv) weigh in favor of final approval.

3. <u>Class Counsel's Reasonable Fee Request Will Neither Impair nor Delay Relief to the Settlement Class.</u>

Under Rule 23(e)(2)(C)(iii), this Court is also to consider the "terms of any proposed award of attorney's fees, including timing of payment." Class Counsel has contemporaneously filed a

motion for attorney's fees and costs that seeks an award consistent with precedent in this district and the Second Circuit. *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 18 Md. 2819, 2020 WL 6193857, at *5–6 (E.D.N.Y. Oct. 7, 2020); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *15 (E.D.N.Y. Jan. 26, 2024). The Settlement is in no way contingent on this Court's awarding the full award requested. Nor will the Court's decision on the amount of the award delay Settlement Class Members receiving compensation, as the parties have waived their right to appeal the Court's award of attorneys' fees. Settlement Agreement at ¶ 6.5.

    **C.**    **The Settlement Treats Settlement Class Members Equitably.**

The Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). The Settlement is designed to benefit all Settlement Class Members equally and equitably, by providing equal access to the Settlement Fund and providing meaningful remedial relief to all Settlement Class Members regardless of whether they make a claim for monetary relief. Each Settlement Class Member may submit only one claim for monetary relief. Accordingly, each claimant that submits a valid claim will receive the same *pro rata* share of the Net Settlement Fund. Moreover, because the remedial relief occurs via SNAI and is not user specific, all Settlement Class Members are entitled to the same remedial relief. Thus, there is no unfair or preferential treatment of any Settlement Class Member, and this factor weighs in favor of final approval. *See Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *11 (N.D.N.Y. Oct. 25, 2023) (finding the requirement that class members be treated equitably relative to each other was satisfied where each class member was to receive a "pro rata share" of the net settlement fund or forgiveness of certain uncollected fees); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16,

17

2019) (finding the settlement satisfied Rule 23(e)(2)(D) because under the proposed plan of allocation, "Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss.").

**D.    The Reaction of the Settlement Class supports final approval.**

The reaction of Settlement Class Members has been overwhelmingly positive. To date, no Settlement Class Member has filed an objection to the terms of the Settlement, nor requested exclusion from the Settlement. *See* Simpluris Decl. at ¶¶ 17 and 19. Settlement Class Members have until September 14, 2025, to request exclusion or to object to the Settlement. *See id*. at ¶¶ 16 and 18. Class Counsel will update the Court after that deadline and prior to the Final Approval Hearing.

The lack of any opposition to the Settlement strongly weighs in favor of final approval. *See Grinnell*, 495 F.2d at 463 (factor two; at the final approval stage, courts consider the Settlement Class's reaction to the Settlement); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (one objection out of "hundreds of thousands class members" indicates strong satisfaction with settlement).

**E.    The Remaining *Grinnell* Factors Weigh in Favor of Final Approval.**

Under the seventh *Grinnell* factor, courts should consider "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. Courts do not require that a defendant "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (internal citation omitted). Rather, where, as here, "the other *Grinnell* factors weigh heavily in favor of settlement," a court "need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *9; *In re AOL Time Warner, Inc.*, 2006 WL

903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair."). Here, every other *Grinnell* factor weighs heavily in favor of settlement; therefore, this factor is neutral.

Lastly, while not an official *Grinnell* factor, courts may also look to the scope of the release. *See Payment Card*, 330 F.R.D. at 42 n.41. Here, the scope of the release is not overly broad as Settlement Class Members will release only those claims relating to the disclosure of Settlement Class Members' personally identifiable information and video viewing behavior to any third party. *See* Settlement Agreement at ¶ 1.25. Thus, the release is sufficiently tailored and appropriate. *See Selby v. Principal Mut. Life Ins. Co.,* No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *3 (S.D.N.Y. Nov. 21, 2003) (finding narrow release of class claims that allowed class members who believe they may have been injured by the alleged practice to pursue claims for monetary relief through individual or class suits weighed in favor or preliminary approval).

In sum, the applicable factors under Rule 23(e)(2) and *Grinnell* strongly support approval. This Court should therefore grant final approval of the Settlement.

## V.   <u>FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.</u>

In its Preliminary Approval Order, the Court previously determined that certification of the action for settlement purposes is appropriate. *See* ECF No. 46 at ¶¶ 4–9. Specifically, the Court found that the Settlement Class satisfied each of the requirements of Federal Rule of Civil Procedure 23 in that (a) the Settlement Class is sufficiently numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to members of the Settlement Class that predominate over questions affecting only individual members (e.g., whether Defendant unlawfully disclosed to third parties Plaintiff's and Settlement Class Members' personally identifiable information without consent in a manner that violated the Video Privacy Protection

19

Act, 18 U.S.C. § 2710, and whether Plaintiff and the Settlement Class Members are entitled to uniform statutory damages under the VPPA); (c) Plaintiff's claims are typical of the claims of the Settlement Class and Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class; and (d) a settlement class action is the superior method for fairly and efficiently adjudicating this Action. *See id.* at ¶ 7. For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

**VI.      THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e).**

FRCP 23(e) requires that notice of a proposed compromise of a class action be given to all members of the class in such manner as the court directs. Generally, notice need only be "reasonably calculated, under the circumstances, to apprise the Settlement Class Members: (1) of the pendency of the Lawsuit; (2) of their right to exclude themselves from the Settlement Class and the proposed settlement; (3) that any judgment, whether favorable or not, will bind all Settlement Class Members who do not request exclusion; and (4) that any Settlement Class Member who does not request exclusion may object to the settlement and, if he or she desires, enter an appearance personally or through counsel." *Truesdale v. Nationwide Affinity Ins. Co. of Am.*, No. 1:11CV467, 2012 WL 12892879, at *6 (M.D.N.C. Oct. 19, 2012); *see also* Fed. R. Civ. P. 23(c)(2)(B); *Visa*, 396 F.3d at 114 ("There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." (internal quotation marks omitted)).

Here, notice was accomplished through direct Email Notice to all Settlement Class Members via the email address they used to create a login to SNAI's Services; the establishment

of a Settlement Website where Settlement Class Members can view the Settlement, the Long-Form Notice, and other key case documents; and the establishment of a toll-free number where Settlement Class Members can obtain additional information. *See* Simpluris Decl. ¶¶ 6-13. Based on this Notice Plan, it is estimated that notice reached over 90% of the Settlement Class Members, which is consistent with the range deemed reasonable by the Federal Judicial Center. *See* Simpluris Decl. at ¶ 14; *see also* FEDERAL JUDICIAL CENTER, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (describing a notice plan as "reasonable" if it has a "reach between 70-95%").

Moreover, the content of the Notices sufficiently advised Settlement Class Members of the essential terms of the Settlement, including the definition of the Settlement Class and the monetary and non-monetary relief; the rights of Settlement Class Members to share in the recovery by filing a Claim Form, to request exclusion from the Settlement Class, or to object to the Settlement, and the specifics on the dates and procedures for exercising those rights; and the date, time and place of the Final Approval Hearing. Thus, the Notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notices also contained information regarding Class Counsel's application for attorneys' fees and reimbursement of litigation expenses, the proposed plan for allocating the Settlement proceeds among Settlement Class Members, and the application for a Service Award to the Settlement Class Representative.

In short, the form and manner of notice proposed here fulfill the requirements of FRCP 23 and due process. *See In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023) (finding notice program that included direct notice and publication notice "satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure

21

and due process, and provided the best notice practicable under the circumstances."); *see also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (finding "the combination of Notice Packets sent individually by first-class mail and/or e-mail to those Class Members who could be identified with reasonable effort, combined with the print and Internet-based publication of Settlement documents was the best notice ... practicable under the circumstances.'").

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order, substantially in the form of the forthcoming proposed Final Approval Order:  (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23 and due process and constitutes the best notice practicable under the circumstances.

Dated: August 29, 2025                          Respectfully submitted,

*/s/ Samuel R. Jackson*
Samuel R. Jackson (5332325)
James Allen Carney (admitted *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
Email: sjackson@cbplaw.com
Email: acarney@cbplaw.com

*Attorneys for Plaintiff*

22