UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/09/2025
```

------------------------------------------------------------------X
                                 :

MARK LEE, *on behalf of himself and all others similarly* :
*situated*,                                   :

                        Plaintiff,      :          24-cv-4493 (LJL)
                                   :

           -v-                       :      OPINION AND ORDER

SPRINGER NATURE AMERICA, INC.,       :
                                   :

                      Defendant.    :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Class Representative Mark Lee ("Lee" or "Plaintiff") moves for final certification of a settlement class, approval of a class-action settlement in the amount of $900,000, an order finding the notice program to satisfy the requirements of Federal Rule of Civil Procedure 23(c) and due process, and an award of attorneys' fees and costs of $318,189.53 and a service award of $25,000. Dkt. Nos. 49, 51. The settlement class is certified, the notice program is approved, and the settlement is approved as fair, reasonable and adequate. The award of attorneys' fees and costs and the service award are approved as modified.

## BACKGROUND

### I.    Background to the Litigation

The allegations of the complaint in this case and certain aspects of the procedural history are recounted in the Court's opinion denying the motion to dismiss. *See Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 243–44 (S.D.N.Y. 2025).

Defendant is a New York corporation that publishes the Scientific American magazine and owns and operates the website https://scientificamerican.com (the "Website"). Dkt. No. 1 ¶ 9. The Website contains prerecorded videos, *id.* ¶¶ 28–30, and a pixel (the "Meta Pixel") that

transmits to Meta Platforms, Inc., formerly known as Facebook, information regarding the online activities of persons who access the Website, including the subscriber's Facebook ID and the title of the prerecorded audio visual material that the subscriber requests or obtains from the Website, and the URL to access that material, *id.* ¶¶ 3–5, 24, 36.  Defendant provides specific categories of data to Meta from which Meta can quickly and easily view the subscriber's Facebook ID profile.  *Id.* ¶ 6.  Plaintiff is an individual who requested or obtained prerecorded audio visual material from the Website and alleges that information regarding his receipt of that material was transmitted to Meta without his consent.  *Id.* ¶¶ 62–64.

Plaintiff brought suit on June 12, 2024, complaining that Defendant violated the Video Privacy Protection Act of 1988 ("VPPA"), 18 U.S.C. § 2710, by knowingly disclosing to Meta the Facebook IDs and URLs identifying the prerecorded audio visual material that he and other class members requested or obtained without obtaining informed written consent.  *Id.*  By opinion and order of March 4, 2025, the Court denied Defendant's motion to dismiss finding that Plaintiff sufficiently alleged standing and stated a claim for relief under the VPPA.  Dkt. No. 29. On March 18, 2025, Defendant answered the complaint.  Dkt. No. 32.

## II.    The Settlement Agreement

The settlement is the product of a full-day mediation session held in person on May 6, 2025, in front of retired judge Diane Welsh.  Dkt. No. 40-1 ¶ 9.  The parties did not hold an initial pretrial conference before the mediation.  *Id.* ¶ 8.  Prior to the mediation, the parties exchanged informal discovery regarding the merits of the case and class certification.  *Id.* ¶ 10.

The settlement is embodied in a Settlement Agreement dated June 26, 2025.  Dkt. No. 40-1; *see also* Dkt. No. 45-1 (amending the Settlement Agreement on July 9, 2025).  Defendant agrees to pay a sum of $900,000 to a non-reversionary settlement fund to be used to satisfy claims of putative class members, the costs of the claims administrator, attorneys' fees and costs,

and a service award to Plaintiff.  Dkt. No. 45-1 §§ 1.32, 1.35.  The settlement is not contingent

upon the Court's approval of the award of attorneys' fees and costs or the service award.  *Id.*

§ 6.5.  Defendant also agrees to suspend operation of the Meta Pixel on portions of its website

relevant to VPPA compliance, i.e., webpages that include both video content and have a URL

that identifies the video content reviewed.  *Id.* § 2.6.  Defendant may seek to obtain

VPPA-compliant consent in the future and may use the Meta Pixel where the disclosure of

information does not identify specific video materials that the user has requested or obtained.  *Id.*

  In exchange, those members of the settlement class who do not opt out of the settlement

will release all claims—including those under the VPAA or other federal, state, local, statutory

or common law sources of authority—against Defendant and its affiliates (and a series of others)

involving the alleged disclosure of the Settlement Class Members' personally identifiable

information and/or video purchase and/or viewing behavior to any third party, including all

claims that were brought or could have been brought in this Action relating to such conduct or

any other claims arising out of the same nucleus of operative facts.  *Id.* § 4.2.

  Plaintiff moved for preliminary approval of the settlement on June 27, 2025.  Dkt. No.

39.  By order of June 30, 2025, the Court directed the attention of the parties to Section 5.3 of the

proposed settlement which, as drafted, would have required all individuals objecting to the

settlement categorically to state whether they had ever asked for or received any payment in

exchange for dismissal of an objection or any related appeal without modification to the

settlement.  Dkt. No. 42.  The Court asked for legal authority for that provision, as well as

information about the proposed settlement administrator, authority for the quick-pay provision in

the Settlement Agreement, and whether the short-form notice proposed to be used should inform

class members that they could make objections pro se.  *Id*.  The parties subsequently agreed to delete Section 5.3 of the Settlement Agreement.  *See* Dkt. No. 45.

### III.    The Notice Program and Reaction of the Preliminary Settlement Class

The Court granted preliminary approval of the settlement by order of July 10, 2025.  Dkt. No. 46.  The Court also found that it would likely be able to certify the settlement class and find that the proposed plan of notice was the best notice practicable under the circumstances and consistent with the requirements of due process and Federal Rule of Civil Procedure 23(c)(2).  *Id*.

Simpluris, Inc. ("Simpluris") was appointed class action and settlement administrator.  Dkt. No. 54 ¶ 4.  On or about July 25, 2025, Simpluris received from Defendant a data file containing 32,648 known Settlement Class Member names and email addresses.  *Id*. ¶ 8.  After confirming the email addresses to ensure they were valid, on July 31, 2025, Simpluris sent notice via email to 29,813 Settlement Class Members for whom a valid email address was available.  *Id*. ¶ 10.  It successfully delivered email notice to 29,262 settlement class members.  *Id*.  On August 21, 2025, it also sent a reminder email notice to 29,561 settlement class members who had not yet responded to the notice.  Dkt. No. 57 ¶ 11.  On September 2, 2025, Simpluris sent another reminder email notice to 29,379 settlement class members who had not yet responded to the notice; it successfully delivered the email notice to 28,853 of those settlement class members.  *Id.* ¶ 8.  The settlement administrator also prepared and maintained a settlement website with important dates and deadlines, settlement-related documents, and a settlement-specific toll-free telephone number for inquiries about the settlement.  Dkt. No. 54 ¶¶ 12–13.  The settlement administrator estimates that individual notice reached approximately 90% of the identified settlement class members.  *Id*. ¶ 14.

The deadline for settlement class members to request exclusion, to submit a claims form, or to object was September 14, 2025.  Dkt. No. 57 ¶¶ 9–11. The settlement administrator received a total of 767 valid claims forms.  *Id*. ¶ 9.  By the deadline for exclusions and objections, the settlement administrator had received no requests for exclusion and no objections. *Id*. ¶¶ 10–11.  The Court received an objection, dated September 15, 2025, on September 23, 2025.  Dkt. No. 55.

## CERTIFICATION OF THE SETTLEMENT CLASS

The proposed Settlement Class in this case is defined as: "All persons in the United States who: (1) possessed login credentials for the website, https://www.scientificamerican.com (the 'Scientific American Website'), whether accessed via a web browser or mobile device and were paying subscribers, (2) possessed a Facebook account, and (3) requested or obtained video content from and/or through any of [Defendant]'s services during the Class Period while logged into Facebook."  Dkt. No. 45-1 § 1.33.  The Class Period is June 12, 2022 to and through July 10, 2025.  *Id.* § 1.3; Dkt. No. 46.

For a class to be certified, it must satisfy the requirements of Rule 23(a), which considers numerosity, commonality of questions of law and fact, whether the claims of the named plaintiffs are typical of the class, and whether the representative parties adequately represent the class's interests.  Fed. R. Civ. P. 23(a).  The class also must satisfy Federal Rule of Civil Procedure 23(b)(3) in that common issues must predominate over individualized ones, and the class action must be superior to other methods available for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

The Court previously preliminarily approved the settlement class and appointed Lee as class representative and Carney, Bates and Pulliam PLLC ("CBP") as class counsel.  Dkt. No. 46 ¶¶ 4–9.  It now confirms and finalizes those findings.  The settlement class is comprised of

5

thousands, if not tens of thousands of individuals and thus well exceeds the number of forty that is frequently considered to satisfy the numerosity requirement. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Joinder of all class members would be impracticable. The common questions include whether Defendant knowingly disclosed the personally identifiable information of members of the class and whether its conduct violates the VPPA. Plaintiff's claims are typical of those of class members, and Plaintiff will fairly and adequately represent members of the class in that his interests are aligned with those of the class. Finally, particularly in a settlement context, the common questions predominate and make the class action a superior means for resolving the dispute. *See In re Am. Int'l Grp. Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012).

The settlement class is therefore certified.

## APPROVAL OF THE SETTLEMENT

I.    **Fairness, Reasonableness, and Adequacy of the Settlement from the Standpoint of the Settlement Class**

Rule 23(e) provides that "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e)(2) requires a court to make certain findings in order for a settlement to be binding on class members. Fed. R. Civ. P. 23(e)(2). A settlement may be approved only if it "is fair, reasonable, and adequate." *Id.*

Rule 23(e)(2), as amended on December 1, 2018, provides that if a proposed settlement would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

   (A) the class representatives and class counsel have adequately represented the class;

   (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Advisory Committee's notes on Rule 23(e)(2) state that the goal of the amendment "is not to displace any factor" previously adopted by any United States Court of Appeals, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The Advisory Committee explained that in certain jurisdictions, lengthy, multifactor tests risked distracting courts and parties from focusing on the key issues in a settlement review. *Id.*

Most of the requirements set forth in the amendments to Rule 23(e)(2) have long been used in the nine-factor test adopted by the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). To evaluate the substantive fairness of a proposed settlement, *Grinnell* instructs a district court to consider "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (quoting *Grinnell*, 495 F.2d at 463). Although the *Grinnell* factors and the Rule 23(e)(2) factors "largely overlap," the Second Circuit has held that Rule 23(e)(2), while not displacing the *Grinnell* factors, "now requires courts to expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243–44 (2d Cir. 2023). In conducting the review required by Rule 23(e), the Court has a duty "to make a considered and detailed assessment of the reasonableness of proposed settlements." *Weinberger v. Kendrick*, 698 F.2d 61, 82 (2d Cir. 1982) (Friendly, J.). In the settlement class context, courts "demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it." *Id.* at 73; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

A review of the factors set forth in Rule 23(e)(2) and consideration of the additional *Grinnell* factors demonstrates that the settlement is fair, reasonable, and adequate.

A.    **Rule 23(e)(2)(A) and (B): Whether class representatives and class counsel have adequately represented the class and whether the proposed settlement was negotiated at arm's length**

Though the proposed settlement was negotiated at arm's length, "given Rule 23(e)(2)'s 'codification of the core factors that should guide a court's approval of a proposed settlement,' courts may no longer apply 'a presumption of fairness to a settlement agreement based on its negotiation at arm's length.'" *Marin v. 310 Bowery Grp. LLC*, 2025 WL 2267785, at *6 (S.D.N.Y. Aug. 8, 2025) (quoting *Moses*, 79 F.4th at 243). In assessing adequacy of representation, courts focus on whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to

conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (citation and internal quotation marks omitted).

Plaintiff's interests are aligned with and not antagonistic to the interests of the class. Each of Plaintiff and the class members possessed and used login credentials for Defendant's websites, and each requested or obtained content through Defendant's services during the class period. Dkt. No. 45-1 § 1.33. Plaintiff alleges that each had their personally identifiable information disclosed. Dkt. No. 1 ¶ 1. Each had an identical interest in recovering from Defendant for compromises of their video privacy.

Class counsel is experienced and capable. CBP has extensive experience in class action litigation, including class litigation involving VPPA claims. Dkt. No. 41 ¶ 3. It has served as co-lead or lead counsel in numerous class actions under the VPPA and the Telephone Consumer Protection Act and ones involving data breaches. *Id.* ¶¶ 3–4. It has extensive knowledge in class action litigation. *Id.* ¶ 5.

The settlement was reached before there was formal discovery and after Plaintiff's counsel had done little factual research. The bulk of the work conducted by counsel consisted of legal research, drafting the complaint, responding to Defendant's motion to dismiss, and moving to strike a motion to strike exhibits submitted by Defendant in connection with the motion to dismiss. *See* Dkt. No. 53 ¶ 46. The absence of formal discovery is not disqualifying. *See* 5 Newberg & Rubinstein on Class Actions § 13.49 (6th ed. 2025) ("A lack of much formal discovery is not necessarily fatal . . . ."). Counsel may obtain sufficient information to value a case through informal avenues including: "past litigation presenting similar legal issues or factual similarities; the results of publicly available government investigations; documents exchanged and witnesses produced informally, perhaps through the mediation process; and

so-called 'confirmatory discovery' that may occur after the parties reach a final settlement." *Id*. There was no need for counsel to conduct extensive discovery to value this case. Much of the value of the case turned upon legal rather than factual questions. The Court has not identified any factual work that CBP would have been required to do in order to understand its case that counsel did not do.

These factors weigh in favor of approval of the settlement.

### B.    Rule 23(e)(2)(C): Whether the relief provided to the class is adequate

The settlement delivers excellent relief to the class given the costs, risks, and delay of trial and appeal. Shortly after the Court decided the motion to dismiss, the Second Circuit adopted a test for personally identifiable information that differed substantially from that which this Court set out in its decision on the motion to dismiss. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025). The Second Circuit held that "'personally identifiable information' encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." *Id*. at 52. The court rejected a VPPA claim similar to this one. In an unpublished order issued shortly after a settlement was reached in this case, the Second Circuit stated: "*Solomon* effectively shut the door for Pixel-based VPPA claims." *Hughes v. Nat'l Football League*, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025) (summary order). After these cases, there was a very real possibility that the class might not be able to recover at all. In that light, the settlement of $900,000 is an exceptionally good result for the class.

"When reviewing the substantive fairness of a proposed settlement, 'the district court is required to review both the terms of the settlement and any fee award encompassed in a settlement agreement' in tandem." *Moses*, 79 F.4th at 244 (quoting *Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019)). The terms of the proposed

attorneys' fee award do not prevent approval of the settlement.  Courts have held that settlement agreements that contain "clear-sailing" and "reversion" clauses and that allocate to counsel a disproportionate share of the settlement "require heightened scrutiny."  *Guoliang Ma v. Harmless Harvest, Inc.*, 2018 WL 1702740, at *5 (E.D.N.Y. Mar. 31, 2018) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)); *see also In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674–75 (9th Cir. 2025); *Vasquez v. A+ Staffing LLC*, 746 F. Supp. 3d 26, 57 (E.D.N.Y. 2024); *Lenorowitz v. Mosquito Squad Franchising, LLC*, 2024 WL 5038238, at *3 (D. Conn. Dec. 9, 2024); *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 223 (W.D.N.Y. 2017).  The concern in those cases is that counsel is compromising the interests of the class to benefit itself.  The Settlement Agreement does not contain a "clear-sailing" provision or a reversion provision, and the proposed fee award, as modified by the Court below, is not disproportionate to the class recovery.  Counsel's interests were and are congruent with those of the class.

The Court initially had concerns regarding the notice program and the proposed method of distributing relief to the class.  In its memorandum of law in support of the motion for final approval of the class action settlement, Plaintiff's counsel stated that "without taking into account expected claims rates, based on the Settlement Class size of 32,468, the Settlement Fund of $900,000 equate[d] to roughly $27.71 per Settlement Class Member before deduction of costs and fees" and compared that recovery favorably to that in other cases that approximated between $16.50 and $1.78 per claim.  Dkt. No. 50 at 15–16.  In fact, the settlement administrator received only 767 valid claims forms.  Dkt. No. 57 ¶ 9.  The per claim recovery thus is much greater— over $1,173 per claim.

The low proportion of class members submitting claims gave the Court pause regarding the effectiveness of the notice and claim process—if the potential recovery was so great, why did so few submit claims forms?  In response, Plaintiff has submitted a declaration from the settlement administrator attesting that a 2.34% claims rate is well within the bounds of reasonable expectations in VPPA cases and citing VPPA cases with claims rates between 1% and 3%.  Dkt. No. 61 ¶ 12.  That declaration assuages the Court's concerns.  There is no reason to question the notice program.  Rule 23(c)(2)(B) requires potential class members to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Here, individual notice was sent via email and the settlement administrator estimates that individual notice reached approximately 90% of the identified class members.  Dkt. No. 54 ¶ 14.  The Court concludes that the notice to the class satisfies Rule 23(c)(2)(B).

The proposed method of distributing relief is effective.  Class members were informed by three direct email notices of the settlement and of their right to submit a claim.  Dkt. No. 61 ¶ 8.  In addition, the settlement administrator maintained a dedicated settlement website and a toll-free telephone line.  *Id*. ¶ 10.  Each class member who submits a valid claim will receive a pro rata share of the settlement fund.  That method is effective and fair and reasonable.

Finally, there is no agreement required to be disclosed under Federal Rule of Civil Procedure 23(e)(3).

**C.    Rule 23(e)(2)(D): Whether the proposal treats class members equitably relative to each other**

The proposal treats class members equitably to one another.  Each settlement class member will share pro rata in the settlement recovery.

In addition to evaluating whether non-representative class members are treated equitably relative to each other, Rule 23(e)(2)(D) also "requires that courts reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members," and courts must "ensure that proposed incentive awards are reasonable and promote equity between class representatives and absent class members." *Moses*, 79 F.4th at 245. Here, there is no basis to believe that Lee compromised the interests of the class to obtain a service award. The service award, as modified below, is reasonable and promotes equity between the class members.

**D.    The Second Circuit's *Grinnell* Factors**

The Court has already discussed the complexity and expense of the litigation, the stage of proceedings and amount of discovery, the size of the settlement in the range of possible recovery, and the risks of establishing liability. The remaining *Grinnell* factors further support approval of the settlement.

Notice of the settlement was sent to over 29,000 class members. Dkt. No. 61 ¶ 5. There was a single objection and no one opted out of the settlement. That reaction constitutes a strong vote in favor of the settlement.

There is no information regarding the ability of the Defendant to withstand a greater judgment. However, where "the other *Grinnell* factors weigh heaving in favor of a settlement," a "court need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *9 (D. Conn. Aug. 4, 2023) (citation and internal quotation marks omitted).

**E.    The Objection**

The Court has received a single objection. Kirk Becker objects that the cost of the settlement threatens to degrade Scientific American and that the disclosure to Meta is not

13

inherently unlawful.  He asks that class members be compensated with free subscriptions rather than cash payouts and that he receive compensation of $1 or more for his participation in this case.  Dkt. No. 55.  Those objections are not well-founded.  The Court's role is not to consider the fairness of the settlement to Defendant, who was represented by counsel, or to ask itself whether it would have negotiated a different settlement.  Rather, the Court is to consider the fairness of the proposed settlement to the class.  The settlement is fair to the class.  Thus, Mr. Becker's implicit criticism that Scientific American may have overpaid for this settlement does not provide grounds for the Court to reject it.  To the contrary, it tends to support the reasonableness of the settlement from the perspective of the class.  It is further not up to the Court to decide whether the settlement consideration should have been paid in kind rather than in cash.

Having reviewed the factors set forth by Rule 23(e)(2) and the additional factors set forth in the Second Circuit's *Grinnell* decision, the Court concludes that the proposed settlement is fair, reasonable, and adequate.  It is therefore approved by the Court.

## APPROVAL OF THE FEE APPLICATION

Class counsel seeks an attorneys' fees award of 33.3% of the settlement fund for a total of $300,000.  Class counsel also seeks reimbursement of out-of-pocket litigation costs of $18,189.53.  The Court approves the out-of-pocket litigation costs.  It awards counsel $200,593.13 in fees.

## I.    Attorneys' Fees Application

A lawyer who has generated a common fund for the benefit of a class is entitled to be compensated for the time and risk it took in generating that fund.  "The common-fund doctrine is . . . rooted in the courts' 'historic power of equity to permit' a person who secures a fund for the benefit of others to collect a fee directly from the fund." *Fresno Cnty. Employees' Ret. Ass'n*,

925 F.3d at 68 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257

(1975)).  In reviewing a fee application in the class-action context, the "court is 'to act as a

fiduciary who must serve as a guardian of the rights of absent class members.'"  *Cent. States Se.*

*& Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care*, *L.L.C.*, 504 F.3d 229,

249 (2d Cir. 2007) (quoting *Grinnell*, 560 F.2d at 1099).  The award "must reflect 'the actual

effort made by the attorney to benefit the class.'"  *Id.* (quoting *Grinnell*, 560 F.2d at 1099)

The district court has discretion to use either the lodestar or percentage methods in setting

a fee award.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  "[T]he trend

among district courts in the Second Circuit is to award fees using the percentage method."

*Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) (citation

and internal quotation marks omitted).  "[T]he percentage method . . . directly aligns the interests

of the class and its counsel and provides a powerful incentive for the efficient prosecution and

early resolution of litigation."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d

Cir. 2005) (citation and internal quotation marks omitted).

"Whatever method is used, the reasonableness of a common fund fee award is governed

by the so-called *Goldberger* factors: (1) counsel's the time and labor; (2) the litigation's

complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the

relationship of the requested fee to the settlement; and (6) considerations of public policy."

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *see Fikes*

*Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 723 (2d Cir. 2023) (holding that

regardless of which method is chosen, "the analysis is effectively the same"); *Wal-Mart*, 396

F.3d at 121 ("[T]he '*Goldberger* factors' ultimately determine the reasonableness of a common

fund fee.").  The Court has discretion to avoid a windfall recovery based on the percentage of the

fund by "adjust[ing] the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors." *Masters*, 473 F.3d at 436.

A.    **The Time and Labor Expended by Counsel and the Attorney Lodestar**

The first factor in determining the reasonableness of a fee request considers the time and labor expended by counsel. *Goldberger*, 209 F.3d at 50.

Counsel claims to have devoted 524.20 hours to the pursuit of this action, yielding a lodestar of $423,160.99 excluding time spent on this motion. Dkt. No. 52 at 7. Counsel also estimates that it will spend another 150 total additional hours in connection with the administration of the settlement. *Id*. at 8. Those figures are inflated. Although counsel devoted time and effort to this case to achieve an outstanding result, its lodestar is not reasonable. The hourly rates are greater than those approved by courts in this Circuit for this type of litigation and the hours billed were far greater than necessary for this case.

The reasonableness of a fee request involves a consideration of what a reasonable paying client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F. 3d 182, 184 (2d Cir. 2008) ("We therefore suggest that the district court consider, in setting the reasonable hourly rate it uses to calculate the 'lodestar,' what a reasonable, paying client would be willing to pay."); *see also Loc. 1180, Commc'ns Workers of Am., AFL-CIO v. City of New York*, 392 F. Supp. 3d 361, 380–81 (S.D.N.Y. 2019) (finding that in calculating attorneys' fees for a class settlement, "a reasonable client would not agree to pay for the work of more than three lawyers in a case of this size and kind," and that "a reasonable client would not agree to compensate Plaintiffs' counsel for the hours spent by each attorney attending the meetings").

To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate in the community for the legal services performed. *See Arbor Hill*, 522 F.3d at 183–

84.  "The burden is on the party moving for attorney's fees to justify the hourly rates sought."

*Brown v. Green 317 Madison, LLC*, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL

1237127, at *1 (E.D.N.Y. Mar. 25, 2014).  That is, "the fee applicant [has the burden] to produce

satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are

in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895

n.11 (1984)); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("The

relevant community . . . is the district in which the court sits.").

        Plaintiff's time records contain time for ten timekeepers.  Plaintiff's counsel requests that

attorneys' fees be awarded based on hourly rates of $1,030 for the three partners on the matter

(Carney, Bates, and Pulliam), an hourly rate of $850 for attorney Jackson, $740 for attorney

Lorigan, $520 for Brown and $385 for Rowland (whom the Court assumes are junior associates),

$260 for Draheim, and $175 for each of Adkins and Walton (the three of whom the Court

assumes are paralegals).  The firm's resume, which is attached to the settlement approval papers,

Dkt. No. 41-1, contains certain information regarding Carney, Bates, Pulliam, Jackson, and

Lorigan.  Carney is a graduate of the University of Arkansas at Little Rock School of Law.  *Id.* at

4.  Bates is listed in The Best Lawyers in America and as a "Super Lawyer" by Mid-South Super

Lawyers Magazine.  *Id.* at 6.  Pulliam is a graduate of the University of Arkansas at Little Rock

School of Law.  *Id.* at 7.  No information is provided as to when any of them graduated law

school or how long they have been practicing law.  Jackson is a 2013 graduate of the University

of Arkansas School of Law and joined CBP in 2021 after a career as a prosecutor.  *Id.* at 9.

Lorigan is a 2016 graduate of the University of Arkansas at Little Rock School of Law and

joined CBP in 2023 after a career as Deputy Prosecuting Attorney in Little Rock. *Id.* at 10.

Courts in New York have approved rates for attorneys in complex matters such as data privacy cases ranging from $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals. *See In re Canon U.S.A. Data Breach Litig.*, 2024 WL 3650611, at *5 (E.D.N.Y. Aug. 5, 2024) (citing *Alcon Vision, LLC v. Lens.com, Inc.*, 2023 WL 8072507, at *7 (E.D.N.Y. Nov, 21, 2023)). "[W]here a prevailing party fails to provide biographical information on an attorney for whom fees are sought, courts have discretion to lower the requested rate for purposes of the lodestar calculation and award fees at the lower end of the prevailing range." *NAACP v. E. Ramapo Cent. Sch. Dist.*, 2020 WL 7706783, at *5 (S.D.N.Y. Dec. 20, 2020); *see also Capitol Records, LLC v. ReDigi Inc.*, 2022 WL 3348385, at *4 (S.D.N.Y. Aug. 12, 2022) (awarding fees at a reduced hourly rate where the plaintiffs failed to provide information about attorneys' education, experience, or position); *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 209 (E.D.N.Y. 2008) ("Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested."). The Court concludes that a reasonable hourly rate for Carney, Bates, and Pulliam would be $600 an hour. The reasonable hourly rate for Jackson and Lorigan would be $350 an hour. The reasonable hourly rate for Brown and Rowland would be $200 an hour. And the reasonable hourly rate for Draheim, Adkins, and Walton would be $125. *See In re Canon*, 2024 WL 3650611, at *7 (using similar hourly rates in data breach case); *Everetts v. Pers. Touch Holding Corp.*, 2025 WL 942800, at *5 (E.D.N.Y. Mar. 28, 2025) (using similar hourly rates in data breach case and noting that the usual range in hourly rate for partners in complex cases is $375 to $600); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 WL 2063864,

at *19 (S.D.N.Y. June 8, 2022) (finding hourly rates of $600 to $1,000 for partners, $350 to $700 for associates, and $150 to $400 for paralegals in data breach case at the "higher end" of reasonable hourly rates); *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 411 (S.D.N.Y. 2019) (finding that "the reasonable hourly billing rate for partners in consumer cases in this District is around $300 per hour").

The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, 2008 WL 746490, at *9 (E.D.N.Y. Mar. 19, 2008). The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary. *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)); *see also Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Hudson's Bay*, 2022 WL 2063864, at *18. "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Finkel v. Captre Elec. Supply Co.*, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (citation and internal quotation marks omitted), *report and recommendation adopted*, 2015 WL 5330388 (Sept. 11, 2015).

The time for which counsel seeks to be compensated is unreasonable and was unnecessary. Counsel recorded a total of 48.65 hours under the category "pre-suit factual investigation" and 62.02 hours under the category of "drafting the complaint." Lodestar Calculation.[1] Of the hours for pre-suit factual investigation, approximately twenty-one were for

---

[1] Counsel submitted directly to the Court a spreadsheet categorizing hours worked on this case by category of work and by firm employee, with hourly rates. By separate order, the Court directed Plaintiff to file the spreadsheet on the docket. The Court references this document as "Lodestar Calculation."

what Plaintiff describes as "Liaison with client re client specific facts and case updates" and "conducting client management" before the case was filed. Numerous others are for internal conferences. A few hours, billed by Brown and Lorigan, are for legal or factual research. *Id.* The client, Lee, himself attests that he spent approximately 1.5 hours conferring with counsel regarding the factual investigation of the case and the initial draft of the complaint and "almost 0.5 hours" reviewing the initial complaint, as well as 0.5 hours reviewing the final drafts of the complaint and conferring with counsel to convey his approval. Dkt. No. 59-2 ¶ 4(a). There are four paragraphs in the complaint describing facts regarding the Plaintiff—they describe that he has been a subscriber of Defendant's for over ten years, that he requested or obtained prerecorded audio visual content through his subscription to Defendant's website, and that he has a Facebook profile. Dkt. No. 1 ¶¶ 42–45. The twenty-page complaint is largely boilerplate. Twenty-one paragraphs are devoted to a generic description of the function and operation of the Meta Pixel, nine are devoted to the background of the VPPA, and twenty-three are devoted to the class allegations and a statement of the claims for relief. Dkt. No. 1. Counsel describes itself as having "extensive experience in class action and complex litigation," including multiple class actions involving similar VPPA claims. Dkt. No. 41 ¶ 3. By the time counsel filed this complaint, numerous other similar complaints involving the VPPA and pixels—some more detailed—had been filed in this District and in others. *See, e.g.*, *Golden v. NBC Universal Media, LLC*, No. 22-cv-9858 (S.D.N.Y. filed Nov. 18, 2022); *Solomon v. Flipps Media, Inc.*, No. 22-cv-5508 (E.D.N.Y filed Sept. 14, 2022); *Martin v. Meredith Corp. et al.*, No. 22-cv-4776 (S.D.N.Y. filed June 7, 2022); *Hughes v. Nat'l Football League*, No. 22-cv-10743 (S.D.N.Y. filed Sept. 14, 2022); *Czarnionka v. The Epoch Times Assoc., Inc.*, No. 22-cv-06348 (S.D.N.Y. filed July 26, 2022) (case filed by Plaintiff's counsel). Counsel would have been able to build

off of that work product.

As another example, counsel recorded 111.77 hours for drafting the opposition to Defendant's motion to dismiss and 82.8 hours for drafting a motion to strike. Lodestar Calculation. Those documents were important. Plaintiff's success on the motion to dismiss was the pivotal event in this case. But it is unreasonable to bill the class nearly 200 hours for a twenty-three-page opposition to the motion to dismiss and an eight-page motion to strike. The motion to dismiss involved well-trodden ground under the VPPA and the motion to strike involved elementary issues under the Federal Rules of Civil Procedure. Indeed, certain portions of Plaintiff's memorandum of law in opposition to the motion to dismiss track its opposition to a similar motion to dismiss filed two years earlier. *See Czarnionka v. The Epoch Times Assoc., Inc.*, No. 22-cv-06348, Dkt. No. 21 (S.D.N.Y. filed Oct. 18, 2022). Neither set of briefs required extensive legal research or involved novel legal arguments.

"A percentage reduction is 'a practical means of trimming fat from a fee application' and is a permissible way of reducing a fee award." *Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)); *see Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants . . . and may use estimates in calculating and allocating an attorney's time."); *Kirsch*, 148 F.3d at 173 ("[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." (citation and internal quotation marks omitted)); *M.H. v. N.Y.C. Dep't of Educ.*, 2021 WL 4804031, at *15 (S.D.N.Y. Oct. 13, 2021) (noting the same), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023). An across-the-

board reduction of counsel's hours by 35% (so that counsel receives 65% of its billed hours) is necessary in this case for the hours billed to be reasonable.

The Court, therefore, recalculates the lodestar by applying the appropriate hourly rate to the appropriate reasonable hours.  These calculations are summarized in the chart below:

| Name | Requested Hourly Rate | Reasonable Hourly Rate | Hours Worked | Adjusted Hours | Requested Fee | Reasonable Fee |
|---|---|---|---|---|---|---|
| Bates | $1,030 | $600 | 4.6 | 2.99 | $4,738 | $1,794 |
| Carney | $1,030 | $600 | 136.65 | 88.82 | $140,749.50 | $53,292 |
| Pulliam | $1,030 | $600 | 20.9 | 13.59 | $21,527 | $8,154 |
| Jackson | $850 | $350 | 178.1 | 115.77 | $151,385 | $40,519.50 |
| Lorigan | $740 | $350 | 67.9 | 44.14 | $50,246 | $15,449 |
| Brown | $520 | $200 | 91.7 | 59.61 | $47,684 | $11,922 |
| Rowland | $385 | $200 | 12.7 | 8.26 | $4,889.50 | $1,652 |
| Draheim | $260 | $125 | 8.25 | 5.36 | $2,145 | $670 |
| Adkins | $175 | $125 | 2 | 1.3 | $350 | $162.5 |
| Walton | $175 | $125 | 1.4 | 0.91 | $245 | $113.75 |
|  |  |  |  |  | TOTAL: | $133,728.75 |

Accordingly, Plaintiff's lodestar is $133,728.75.

**B.     The Magnitude, Complexities, and Risk of the Litigation**

"[C]ontingency risk and quality of representation must be considered in setting a reasonable fee."  *Goldberger*, 209 F.3d at 53.  Counsel performs a public service when it takes on a consumer class action lawsuit and, by funding that litigation without any certainty of a return, incurs a significant risk.  That risk can come in more than one form.  A case may try a novel legal argument, requiring counsel to invest in developing legal theories without any certainty that they will be adopted.  The case may also require a lengthy and expensive period of time to develop, requiring counsel in effect to extend a long-term loan of time and money on behalf of the class (and to forego other work) without any certainty that loan will be repaid.  *See*

*Dennis v. JPMorgan Chase & Co.*, 2023 WL 3646801, at *3 (S.D.N.Y. May 25, 2023) (applying a multiplier to account "for the time value of money and the nearly seven-year delay in counsel's payment"); 5 Newberg & Rubenstein on Class Actions § 15:87 (noting that counsel extends credit on behalf of the class with an uncertain recovery and thus the multiplier should account for the time value of money). A case that comes on "the heels of a government enforcement action" or is "a repetitive type of case" in which counsel can use old pleadings presents less risk than a novel, cutting-edge, or one-off case. 5 Newberg & Rubenstein on Class Actions § 15:87.

In this case, the "contingency" risk was relatively low. The case involved primarily legal issues that would be resolved at the motion to dismiss stage and at the motion for class certification stage. There was risk in those legal issues. That risk "must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. Before the Second Circuit's decision in *Solomon*, the viability of a VPPA case based on the Meta Pixel was unsettled. Courts went both ways on the issue. *See Lee*, 769 F. Supp. 3d at 258–59 (discussing courts' approaches to VPPA pixel cases). But the legal considerations on both sides of the issue were well-vetted and counsel would be able to borrow off of that vetting and, as this case demonstrated, those issues would be determined early in the case before counsel was required to make a significant investment of time or money. The case did not involve complex factual issues that would only be developed over time and with extensive document discovery and deposition practice and the resolution of which would determine whether the case had value. *See, e.g.*, *Guevoura Fund*, 2019 WL 6889901, at *8 (holding that counsel was entitled to be compensated for risks it took that it would fail to establish "falsity, scienter, loss causation or damages" at trial); *Johnson v. Brennan*, 2011 WL 4357376, at *18 (S.D.N.Y. Sept. 16, 2011) (noting how the "circumstances of this case presented hurdles to a successful recovery" because there was a "fact-intensive inquiry" in which

the "Defendants' witnesses disputed the facts presented by Plaintiffs, giving rise to credibility issues and significant risk at trial"); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *15 (E.D.N.Y. Sep. 18, 2007) (finding that in a securities class litigation, "Plaintiffs would have to demonstrate that Defendants caused its injuries by their fraud and that Defendants acted with scienter," making the recovery "far from certain"); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 435 (S.D.N.Y. 2016) (noting significant risk in antitrust case where counsel "prosecuted this case largely on contingency and assumed the risk of recovering nothing if the claims were dismissed at various stages . . . [and] Counsel and their clients waged a battle against one of the largest corporations in the world, knowing full well that dismissal of the suit could have widespread consequences to their future business").  This case thus did not involve the type of risk common to many other kinds of class action lawsuits.

## C.    The Quality of Representation

In *Goldberger*, the Second Circuit held that the quality of representation "is best measured by results," and by comparing the recovery with the extent of possible recovery.  209 F.3d at 55.  By that measure, the quality of representation here was superlative.  Counsel achieved substantial success for the class in the face of the risk that the class would recover nothing.  Counsel is entitled to share in that success.

The court also reviews "the backgrounds of the lawyers involved in the lawsuit," *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008), including the backgrounds of opposing counsel.  "The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Plaintiff's counsel has been recognized for its experience and expertise in handling consumer class actions, as reflected by the numerous cases in which it has been appointed class counsel or co-lead counsel.  *See* Dkt.

No. 41-1.  Defendant is represented by Davis Wright Tremaine, one of the premiere firms in New York City handling this type of litigation.

### D.    The Requested Fee in Relation to the Settlement

Counsel's proposed fee award constitutes 33.3% of the total recovery.  It is common in this District for the Court to approve fee awards in the range of 25%–33%.  *See In re Beacon Assocs. Litig.*, 2013 WL 2450960, at \*14 (S.D.N.Y. May 9, 2013).  Counsel's proposal, however, is "at the high end of what this and other courts regularly award."  *Gruber v. Gilbertson*, 647 F. Supp. 3d. 100, 127–28 (S.D.N.Y. 2022).  More recent empirical data "show[] fees generally averaging around 25%, with higher fees still commonly awarded."  *Id.* (citing 5 Newberg & Rubenstein on Class Actions § 15:83 (6th ed. 2022)).

### E.    Public Policy Considerations

"[W]hen considering whether to approve a fee award, 'courts consider the social and economic value of the class action, and the need to encourage experienced and able counsel to undertake such litigation.'"  *In re Canon*, 2024 WL 3650611, at \*9 (quoting *Kurtz v. Kimberly-Clark Corp.*, 2024 WL 184375, at \*17 (E.D.N.Y. Jan. 17, 2024)).  Counsel performed a public service in undertaking this case and litigating to further the aims of a statute passed by Congress. In addition to achieving a monetary recovery for the class, counsel obtained Defendant's agreement to suspend operation of the Meta Pixel on portions of its website relevant to VPPA compliance, i.e., webpages that include both video content and have a URL that identifies the video content reviewed.  Dkt. No. 45-1 § 2.6.  Public policy weighs in favor of the attorneys' fee award.  *In re Canon*, 2024 WL 3650611, at \*9; *see also In re Hudson's Bay*, 2022 WL 2063864, at \*21 ("In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures.").

### F.    Reaction of the Class

There have been no objections submitted by members of the class to the proposed fee award, and no requests for exclusion from the class.  The absence of objections and requests for exclusion weighs in favor of the fee application.

### G.    Lodestar Multiplier

The Court has calculated the lodestar at $133,728.75.  "[A]n unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case." *Fresno Cnty. Emps.' Ret. Ass'n*, 925 F.3d at 68.  In calculating whether and by how much to apply a lodestar multiplier, it is appropriate for the Court to examine the lodestar in other comparable cases, *see Fikes*, 62 F.4th at 726; *Wal-Mart*, 396 F.3d at 123, cognizant always that no two cases are precisely alike and that the Court must forever be on guard that what was done in the past is not necessarily what should be done in the present.  In comparable cases, Plaintiff's counsel has requested and received fees ranging from those which would constitute a negative multiplier to those with a lodestar multiplier of 1.9.  *See In re Canon*, 2024 WL 3650611, at *7–8; *Grice*, 363 F. Supp. 3d at 411 (applying a multiplier of 1.9 in privacy class action and noting that the multiplier "closely aligns with the median multiplier in consumer cases of 1.82"); *Volino v. Progressive Cas. Ins. Co.*, 2025 WL 871602, at *2 (S.D.N.Y. Mar. 20, 2025) (noting that "[f]rom 2009 to 2013, the mean lodestar multiplier in consumer class actions was 1.32," and approving lodestar multiplier of 2.45 in consumer class action involving novel theory of liability).

Considering the *Goldberger* factors, the Court considers a lodestar multiplier of 1.5 to be appropriate in this case and to result in a reasonable and appropriate fee award.  Counsel's litigation risk and investment of time and money were relatively modest, but it achieved a substantial success for the class.

Considering the *Goldberger* factors and applying this multiplier to the lodestar of $133,728.75, the Court approves a fee award of $200,593.13.

## II.    Attorney Expenses

Plaintiff's counsel also seeks the reimbursement of $18,189.53 in out-of-pocket litigation expenses.  Dkt. No. 52 at 20.  The expenses include $12,041.25 for mediation services, $605 for filing and pro hac vice fees, $5,198.33 for travel and lodging, $342.36 for online research and $2.59 for postage.  Dkt. No. 53 ¶ 54.

Counsel is entitled to reimbursement of reasonable litigation expenses from the settlement fund.  *See, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *23 (S.D.N.Y. Sept. 9, 2015); Fed. R. Civ. P. 23(h).

The Court concludes that the reimbursement expenses are reasonable.  Plaintiff's application for reimbursement is therefore approved.

## III.    Service Award to Lee

Counsel seeks an incentive award of $25,000 for class representative Mark Lee.  Counsel argues that Lee "was, and still is, dedicated to putting this matter through to a successful completion for the benefit of the Class members" and that he "made himself available to Class Counsel to ensure factual matters at issue in this Action were properly accounted for."  Dkt. No. 52 at 18.  Counsel argues that Lee "devoted significant time" to this case.  *Id*.

In considering the size of a service award, District courts within this Circuit have generally relied upon the following factors:

> [1] the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, [2] the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), [3] any other burdens sustained by that plaintiff . . . and, of course, [4] the ultimate recovery.

*Fikes*, 62 F.4th at 721 (2d Cir. 2023) (quoting *Dial Corp.*, 317 F.R.D. at 439); *see also*

*Hernandez v. Between the Bread 55th Inc.*, 2021 WL 12279220, at *5 (S.D.N.Y. Aug. 16, 2021);

*Mangahas v. Eight Oranges Inc*, 2025 WL 3033658, at *15 (S.D.N.Y. Oct. 30, 2025). "District

courts also 'often look to the sums awarded in similar cases, and compare the named plaintiff's

requested award to each class member's estimated *pro rata* share of the monetary judgment or

settlement.'" *Fikes*, 62 F.4th at 721 (quoting *In re AOL Time Warner ERISA Litig.*, 2007 WL

3145111, at *2 (S.D.N.Y. Oct. 26, 2007)). "[A]n improvident award can suggest or give rise to

the concern that the named plaintiff is benefitting at the expense of the persons for whom he or

she acts as fiduciary either directly, through a payment from a common fund otherwise available

to [class members], or indirectly, by compromising the claims of the absent [class members] in

exchange for payment in the form of a service fee." *Allred ex rel. Aclaris Therapeutics, Inc. v.

Walker*, 2021 WL 5847405, at *6 (S.D.N.Y. Dec. 9, 2021).

    Lee is entitled to a service award in this case. By serving as class representative,

providing information to Plaintiff's counsel, and being involved in the settlement, he delivered

value to the members of the class. That involvement was not trivial. Plaintiff put himself at risk

of being subject to the costs and burdens of discovery, including sitting for a deposition or

producing documents. Moreover, the ultimate recovery was substantial. There is no basis to

believe that Lee compromised the interests of the class to obtain a service award.

    However, the $25,000 he requests is far disproportionate to the value he delivered to the

class and the risk he assumed. Lee assumed no personal risk in becoming and continuing as a

litigant other than the risks common to all litigants (e.g., that he might be subject to deposition).

*Contra In re Hudson's Bay*, 2022 WL 2063864, at *23 (S.D.N.Y. June 8, 2022) ("[I]n an

employment case, a plaintiff may be a current or former employee whose work on behalf of the

class risks adverse actions by the employer or co-workers."); *Hernandez*, 2021 WL 12279220, at *6 (named plaintiff put his ability to obtain future employment at risk). The time and effort Lee devoted to the case also do not warrant a $25,000 award. Lee claims to have spent approximately 52.5 hours of time devoted to this litigation. Dkt. No. 59-2. That time is far disproportionate to the time needed to deliver value to the class. While class representatives are expected to act as fiduciaries, there is no reason why Lee would have had to spend twelve hours before the filing of the complaint reading Scientific American and researching Springer Nature America, Inc., and the VPPA (when his counsel was expert in the VPPA), and no reason he would have needed to spend "over 22 hours of his time" doing his "own research on the issues raised in the case" and conferring with counsel after the complaint was filed *Id.* ¶ 5. Defendant did not notice Lee's deposition or request documents from him. According to his account, he spent approximately 1.5 hours conferring with counsel regarding the facts and the initial draft of the complaint, *id.* ¶ 4(a)(i), 1.5 hours conferring with counsel during the mediation, *id.* ¶ 5(h), and some additional hours gathering documents for Plaintiff's counsel, *id.* ¶ 5(c). There is nothing unusual about that time that would justify such a high service award. Lee also suffered no other burdens for agreeing to serve as named plaintiff. *Contra Mangahas*, 2025 WL 3033658, at *15 (approving service award of $25,000 to plaintiff in FLSA case who was subject to defamation lawsuit because of her role in lawsuit).

Courts have approved service awards ranging from $2,500 to $10,000 in other VPPA and privacy cases. Dkt. No. 59-1. Considering comparable cases as well as the individualized facts of this case, the Court approves a service award to Lee of $5,000.

**CONCLUSION**

The motion for final certification of a settlement class, approval of the class-action settlement, and an order finding the notice program to satisfy the requirements of Federal Rule of Civil Procedure 23(c) and due process is GRANTED.

The motion for an award of attorneys' fees and costs and a service award is GRANTED as modified below:

- $200,593.13 in attorneys' fees;

- $18,189.53 in attorney expenses; and

- $5,000 as a service award to Plaintiff Mark Lee.

The Clerk of Court is respectfully directed to close Dkt. Nos. 49 and 51.

SO ORDERED.

Dated: December 9, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge